## 68198. BEGGS v. PACIFIC MUTUAL LIFE INSURANCE COMPANY.

BIRDSONG, Judge.

This is an appeal from summary judgment granted to the insurer on grounds that the soft palate operation to correct a congenital defect of the appellant's two-year-old child was excluded from coverage by the pre-existing condition provisions of the policy. The pertinent provision excludes coverage of treatment of a *"disease manifested or bodily injury sustained* before the insured became covered under this Coverage, *unless such insured, while covered under this Coverage, completes a 90-day period during which such insured receives no medical, surgical or nursing services,* and no drug or medicine obtainable only upon the prescription of a physician *to treat such disease or injury. . . ."* (Emphasis supplied.)

On motion for summary judgment viewing the evidence in the appellant's favor as respondent, the evidence shows that the appellant (and his company of which he is a principal) applied for group coverage on January 14, 1980, paid the premium, and specifically stated on the application that the "desired coverage date" was January 14, 1980. He had expressly sought insurance which would cover treatment of his child's congenital defect, because he had previously encountered difficulties with pre-existing exclusions with his wife's medical problems. Assuming, for purposes of this motion for summary judgment, that the insurance broker was the agent of appellee Pacific Mutual, the appellee's agent assured Beggs that the coverage would be effective on the date requested, January 14, 1980. The next day, on January 15, the child was examined by a surgeon; the examination lasted no more than fifteen minutes and consisted merely of the surgeon's looking briefly into the child's mouth. The operation in question was performed in March 1980. *Held*:

1. Appellant contends that the child's congenital condition was not a disease or injury and was therefore not within the described conditions excluded under the pre-existing conditions clause. How-

ever, the policy coverage extended only to injury or disease, so that if a congenital defect was neither of these as appellant contends, treatment for it was not covered in the first place, and it would be unnecessary to invoke the exclusion.

As to whether this congenital defect was a "disease" so as to be covered by the policy, in *Aetna Life Ins. Co. v. Sanders*, 127 Ga. App. 352, 354 (193 SE2d 173), we approved the following definition of "disease" found in Black's Law Dictionary (4th ed.): " 'Deviation from the healthy or normal condition of any of the functions or tissues of the body; an alteration in the state of the body or of some of its organs, interrupting or disturbing the performance of the vital functions, and causing or threatening pain or weakness.' " Unless the policy specifically excludes congenital conditions — and this one does not — "disease" as defined by Black would encompass a "deviation from the healthy or normal condition of any of the functions or tissues of the body . . ." that arose before birth. The burden to prove a fact situation is upon the insurer, and particularly where construction is uncertain, the benefit of interpretation is given to the insured. See *Mutual Life Ins. Co. of N. Y. v. Bishop*, 132 Ga. App. 816, 817 (209 SE2d 223).

2. The brief diagnostic examination on January 15 did not constitute "medical services . . . to treat such pre-existing disease" occurring within a 90-day period ending while coverage was in effect (that is, the child completed a 90-day treatment-free period while insured and prior to her March operation). Pacific Mutual points to the phrase "medical services," but the words "to treat the disease" must refer to medical services as well as to prescription drugs, because according to the object of the exclusion, services rendered to any unrelated condition, like drugs prescribed for an unrelated condition, would not invoke the pre-existing condition exclusion. In *Mutual Life*, supra, p. 818, we held that " 'medical care and treatment' . . . generally refer to something done in the application of the curative arts . . . with the end in view of alleviating a pathological condition. Thus, surgery, in its extended sense, may constitute 'care and treatment' when a mere examination or evaluation does not [cit.]. . . . Where the purpose of the two preoperative visits was for diagnostic . . . purposes only, with no treatment involved, we hold that they alone were insufficient to bring the expenses of otherwise [the] insured operation within the exclusionary clause." As noted, Pacific Mutual contends this case does not apply here because the relevant clause is "medical services" of any kind or purpose. We see no significant difference between "treatment" of an injury or disease, and "medical services to treat" an injury or disease, as far as this subject matter goes. Black's Law Dictionary (4th ed.), p. 1673 describes "treatment" as "a broad term covering all the steps taken to effect a

cure of an injury or disease; the word including examination and diagnosis as well as application of remedies." However, we are governed by Georgia law interpretations; *Mutual Life*, supra, controls. In that case, the administration of diagnostic tests and a physical examination were held not to be "medical treatment" within the exclusionary clause. It was noted that "[t]he burden of demonstrating that a fact situation comes within the exclusionary clause of an insurance policy is on the insurer. [Cits.] Where, under Georgia law, construction of the policy is necessary, 'exclusions from coverage are construed against the insurer and in favor of providing the indemnity sought.' [Cit.]" *Mutual Life*, supra, p. 817. That rule applies here, the more so because the question of what constitutes "treatment" is susceptible to varied interpretations. "Medical services . . . to treat such injury or disease" does not include a mere cursory visual examination; this was certainly less than the diagnostic services which were rendered to the insured in *Mutual Life*, supra, and were deemed not to be treatment excluded by the pre-existing condition provision.

As the January 15 examination was not "medical services . . . to treat the [pre-existing] injury or disease," there is no remaining dispute that when the child was operated on in March 1980, she had completed a 90-day "treatment free" period during coverage. Her expenses were therefore not excluded as a pre-existing condition. The same is true whether coverage became effective on January 15, 1980, or on February 1, 1980, as contended by Pacific Mutual. As to the latter argument, however, we would be compelled by *Posey v. Gulf Life Ins. Co.*, 115 Ga. App. 531 (154 SE2d 745) to hold that coverage commenced February 1 notwithstanding the representations of the agent. See *Posey*, supra, and *Lucas v. Continental Cas. Co.*, 120 Ga. App. 457 (170 SE2d 856).

*Judgment reversed. Quillian, P. J., and Carley, J., concur.*

DECIDED JUNE 14, 1984 — ▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

*James B. Gordon*, for appellant.
*H. Sanders Carter, Jr.*, for appellee.