74651. COREN v. PURITAN INSURANCE COMPANY.
74652. JUSTICE v. PURITAN INSURANCE COMPANY.
74653. PATTERSON et al. v. PURITAN INSURANCE
COMPANY.
(362 SE2d 380)

BIRDSONG, Chief Judge.

Summary Judgment — Contract Construction. James A. Justice was employed by Metro Ambulance Service (Metro) as a helicopter pilot for both ambulance and charter service. In late July 1985, Justice flew Metro's helicopter to Dooley Helicopter's repair facility at Peachtree-DeKalb Airport for maintenance and possible repairs. The helicopter had two engines; one engine showed a temperature variance of 40 degrees higher than the other, and one engine reflected a six degree higher RPM rating than the other. While making the check of the engines, Dooley's personnel disconnected the torque sensor lines connected to each engine. When those lines are disconnected, the engines should not be energized because oil will be discharged through the line and exhaust the oil supply.

On August 4, 1985, while the helicopter was parked on the tarmac at Dooley's repair shop with the torque lines disconnected, Justice with two other employees of Metro (Patterson and Ellison) and their female companions (Filkens, Pritchett and Coren) were enjoying a night out at a local restaurant bar not far from Peachtree-DeKalb Airport. It was suggested and agreed among the six persons that they would drive to Dooley's and take the helicopter for a joy-ride. None of the participants was aware that the torque sensor lines had been disconnected.

It is undisputed that Part 91 of the FAA regulations required a certified mechanic performing maintenance or making repairs upon an FAA registered aircraft, prior to returning an aircraft to service, to make an entry in the log approving the craft for return to service and signifying that the helicopter engines were at least equal to their original condition at completion of the maintenance or repair. It is also undisputed that inasmuch as service on the helicopter had not been completed as of midnight, August 4, 1985, no signature of certification of completion of satisfactory repairs had been entered by the mechanic. Justice and his five companions drove to Peachtree-DeKalb Airport and used the helicopter for their joy-ride. When the oil supply was exhausted, the helicopter crash-landed, resulting in varying degrees of injuries to the six occupants. The passengers brought an action against Justice (among other defendants) seeking damages for their injuries. Justice requested Metro's insurer, Puritan Insurance Company, to defend him in those actions inasmuch as he was a named insured in the policy. Puritan, relying upon an exclusionary clause in the policy, brought the present declaratory judgment action

contending coverage was voided and excluded and no defense was justified. After much discovery, Puritan moved for summary judgment as did the several defendants in the declaratory judgment action. The trial court concluded that the exclusionary provision advanced by Puritan, Exclusion 2 (c), was applicable and excluded coverage because the airworthiness certificate was not in full force and effect because the helicopter had not been maintained in accordance with Part 43 of the Federal Aviation Regulations. Summary judgment was granted to Puritan and the court found no obligation on the part of the insurer to defend any claim asserted for the injuries arising out of the helicopter crash. Coren (Case No. 74651), Justice (Case No. 74652) and Patterson and Ellison (Case No. 74653) have all sought appeal, in substance enumerating the same errors. *Held*:

1. The trial court based its decision upon Exclusion 2 (c) of the policy, which states that the policy does not apply, and no coverage is afforded to any insured while the aircraft is in flight "[i]f its airworthiness certificate is not in full force and effect." The insurance policy also contained a "Standard Endorsement No. 10" which provided, in part: "The EXCLUSIONS of the policy to which this endorsement is attached are deleted and are replaced by the following exclusions. . . ." Hence, the trial court erred in basing its decision on Exclusion 2 (c) of the policy which was superseded by Endorsement 10.

Paragraph 3 of Endorsement 10 also provides that "the Insurer expressly agrees that no violation by the Named Insured of any safety or economic rule, regulation, order, or other legally imposed requirement of the Federal Aviation Administration . . . shall affect the insurance afforded under this policy." Thus, any violation of FAA regulations was waived as a basis for denial of insurance coverage.

However, the Exclusions section of Endorsement 10, excludes from coverage: "Any loss arising from operations with aircraft for which an airworthiness certificate had not been issued, has been surrendered, or has been suspended or revoked by the Administrator of the Federal Aviation Administration, or *has expired by its own terms*. . . ." (Emphasis supplied.) The airworthiness certificate was prominently posted in the interior of the helicopter and stated: "this airworthiness certificate is effective as long as the maintenance, preventive maintenance, and alterations are performed in accordance with Parts 21, 43, and 91 of the Federal Aviation Regulations. . . ."

Section 21.181, FAA regulations, provides that an airworthiness certificate is "effective," unless sooner revoked or terminated, "as long as the maintenance, preventive maintenance, and alterations are performed in accordance with Parts 43 and 91 of this chapter. . . ." 14 CFR 76-77. Section 91.167 states that no person may operate any aircraft that has undergone maintenance, preventive maintenance, or alteration, unless "[i]t has been approved for return to service by a

person authorized under § 43.7 of this chapter; and . . . [t]he maintenance record entry required by § 43.9 or § 43.11, as applicable, of this chapter has been made." 14 CFR 187. As stated earlier, it is undisputed that this aircraft was undergoing maintenance and repair and no mechanic had authorized its return to service, nor had any entry required by FAA regulations been made.

Accordingly, even though Endorsement 10 provides that the insurer waived any violation of FAA regulations as a basis for denial of coverage, the same endorsement stated that insurance coverage was excluded for any loss arising from operation of the helicopter if the airworthiness certificate "has expired by its [own] terms." This helicopter's airworthiness certificate had expired by its own terms on its face because the helicopter was undergoing maintenance and repair and had not been returned to service by an authorized mechanic nor had the record entry been made of its return to service. Under the terms contained on the face of the airworthiness certificate it was no longer "effective." The trial court was correct in its finding that "the airworthiness certificate of the helicopter was not in full force and effect at the time of the accident," although it was incorrect to base such finding upon Exclusion 2 (c) of the contract, which had been superseded. Regardless of the reason given, a judgment "right for any reason" will be affirmed by an appellate court. *Knight v. Stevens Logging*, 173 Ga. App. 359, 360 (326 SE2d 494); *Fourteen West Realty v. Wesson*, 167 Ga. App. 539, 540 (307 SE2d 28).

2. Puritan argues that Endorsement 10 is applicable only for "air transportation" services, and that "air transportation" involves only interstate or foreign air service. We do not agree. Puritan apparently convinced the trial court that the local "joy-ride" involved neither interstate nor foreign transportation and the amendment did not apply.

Metro was involved in "air transportation" service either as an ambulance or as a charter carrier. There was evidence that Justice has on occasion flown to points as far away as Augusta, immediately adjacent to South Carolina. As we view this endorsement, it was afforded Metro because its services could easily cross state lines, i.e., South Carolina, North Carolina, Alabama, and Tennessee are all within a shorter range of Metro than is Augusta. Clearly the possibility of Metro's air transportation services crossing a state line existed. Thus to provide Metro with appropriate and even necessary liability protection for bodily injury and property damage in the event of such interstate travel and to avoid CAB sanctions, Puritan completed the policy by the addition of Standard Endorsement No. 10. Whether an incident occurred while the aircraft was actually engaged in either interstate or intrastate air transportation would have no effect upon the efficacy of the endorsement, for we construe the apparent purpose of the endorsement to be to bring Metro into compliance with CAB re-

quirements for any air taxi service where interstate operations may be involved. Certainly such coverage was continuous and not intermittently effective only during interstate crossings. While we are cognizant of a more limited interpretation of the effect of a similar amendment in some foreign jurisdictions, we are not bound by those interpretations of this endorsement.

In construction of an insurance policy, we begin with the general intent of the parties to provide insurance covering the operation of the entity insured. Any ambiguity in a document is to be construed against the draftsman. *Anderson v. Southeastern Fidelity Ins. Co.,* 251 Ga. 556, 557 (307 SE2d 499). If it is possible all provisions should be interpreted to harmonize one provision with another. *Georgia Carpet Express v. Travelers Indem. Co.,* 148 Ga. App. 603, 605 (252 SE2d 17). "If the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred. . . ." OCGA § 13-2-2 (5). It is the public policy of this state that innocent victims who are injured should have an adequate recourse for the recovery of their damages and "ex tempore" use of the insured vehicle does not automatically exclude coverage. *Anderson,* supra at 557. Any exclusion from coverage is strictly construed against the insurer and in favor of the coverage sought. *Beggs v. Pacific Mut. Life Ins. Co.,* 171 Ga. App. 204, 206 (318 SE2d 836). We find the purpose of this endorsement clearly was to expand coverage to include air taxi flights, but not to limit the amendment to a segment of different types of coverage, each mutually exclusive. We find that Standard Endorsement 10 was applicable to this incident.

3. Appellants contend the policy exclusions based on violations of Federal Aviation Regulations are violative of OCGA § 33-24-30 (a), which provides that "[n]o policy of insurance issued or delivered in this state . . . shall exclude or deny coverage because the aircraft is operated in violation of civil air regulations pursuant to federal, state or local laws or ordinances." The apparent basis for this statute is typified by *Southwestern Life Ins. Co. v. Rowsey,* 514 SW2d 802, 806 (Tex. App. 1974), wherein it was held that "the federal aviation regulations are so labyrinthine that it is nearly impossible for a plane crash to occur without the violation of at least one regulation." However, subsection (b) of OCGA § 33-24-30 provides "[t]his Code section does not prohibit the use of specific exclusions . . . (4) Establishing limitations on the use of the aircraft." The controlling exclusion in Standard Endorsement No. 10 found applicable in Division 1 above was that "[a]ny loss arising from operations with aircraft for which the airworthiness certificate . . . has expired by its own terms . . ." is therefore not within coverage of the policy. This exclusion from coverage for the "operation" of the helicopter clearly falls within the "use

of the aircraft" exception of OCGA § 33-24-30 (b) (4). This is obviously because limitations on use may relate to the insurer's assumption of risk not extending to unsafe and unauthorized use, as may necessarily be determined or controlled by reference to federal, state or local regulations. Coverage in this case was not excluded because operation of the helicopter violated federal regulations, but because it was operated while its airworthiness certificate had expired by its own terms. This exclusion was a limitation on its use. Therefore, § 33-24-30 (a) does not apply. *United States Fire Ins. Co. v. Hilde*, 172 Ga. App. 161 (1) (322 SE2d 285).

*Judgments affirmed. Deen, P. J., and Pope, J., concur. Deen, P. J., also concurs specially.*

DEEN, Presiding Judge, concurring specially.

Were this court to accept the arguments advanced by the appellants, Puritan Insurance Company might very well plead, "Where is our Pilgrim sense of solid right?" In Memoriam, 106 Ga. App. XLIII (1962). While concurring with the majority opinion's rejection of those arguments, I also note that it would appear no coverage existed under the policy because the flight was unauthorized.

It is unclear from the record whether the drinks of scotch, champagne, and brandy consumed by Justice and his fellow employees, over a five to six-hour period at a bar, distorted and dimmed their awareness or discernment of the disconnection of the torque sensor lines, but it was undisputed that the midnight helicopter flight by Justice and two fellow employees, accompanied by three women (two of whom they had met for the first time that night at a bar), was a purely personal "joy ride." This "joy ride" was unconnected to any commercial or air ambulance use for which the named insured, Metro Ambulance Service, Inc., had taken out the insurance policy.

The insurance policy defined "insured" as "Not only the named insured, but also any person while using or riding in the aircraft . . . *provided the actual use is with the expressed permission of the named insured.*" (Emphasis supplied.) Metro Ambulance Service denied extending permission to Justice and the two fellow employees for that personal use of the helicopter, and no evidence of such permission was adduced. There would be no coverage for the incident in this case, because Justice, his fellow employees, and their companions were not insureds, under the simple and clear terms of the policy. However, although the appellee raised the issue of permissive use in its complaint, the only basis for summary judgment asserted by the appellee and considered by the trial court was the airworthiness certificate issue, and our affirmance must be based on that latter issue. In any event, by denying Justice, under the facts here, justice is served.

DECIDED SEPTEMBER 16, 1987 —
REHEARINGS DENIED OCTOBER 29, 1987 —

*James D. Hogan, William T. Casey, Jr.*, for appellant (case no. 74651).

*George B. Haley, Frank F. Rox*, for appellant (case no. 74652).

*W. Fred Orr II, James G. Edwards II*, for appellants (case no. 74653).

*Sewell K. Loggins, John J. Wiles*, for appellee.