75040. HOWELL et al. v. UNITED STATES FIRE INSURANCE COMPANY.
75041. PRUITT et al. v. UNITED STATES FIRE INSURANCE COMPANY.
75042. WILSON et al. v. UNITED STATES FIRE INSURANCE COMPANY.
75043. YIN v. UNITED STATES FIRE INSURANCE COMPANY.
75044. BOLAND et al. v. UNITED STATES FIRE INSURANCE COMPANY.
75045. AIR CARRIERS EXPRESS SERVICES, INC. et al. v. UNITED STATES FIRE INSURANCE COMPANY.

(363 SE2d 560)

CARLEY, Judge.

On September 29, 1985, a Cessna 208 Caravan aircraft carrying a pilot and sixteen parachutists crashed shortly after take-off. All sev-

enteen persons on board were killed. The aircraft was owned by appellant-defendant Air Carriers Express Services, Inc. (ACES). Appellee-plaintiff insurer had issued a policy which provided coverage to ACES for damage to the aircraft and for liability resulting from its operation. Appellee initiated this declaratory judgment action, naming as defendants appellant ACES and the appellant-administrators of the estates of Mr. Steven Wilson, the pilot of the aircraft, and of Mr. David Williams, the president of ACES. The remaining appellant-defendants sought and were granted permission by the trial court to intervene in the action as personal representatives of four of the parachutists killed in the crash.

In its petition, appellee sought, insofar as it is relevant to these appeals, a declaratory judgment to the effect that there existed no insurance coverage for the crash and that it had no duty to defend any civil action arising from the crash. Although appellee's petition stated several grounds for its denial of coverage, it moved for partial summary judgment based only on the ground that the pilot, Mr. Wilson, did not meet the terms and conditions set forth in the "open pilot provision" of the policy declaration. Appellants in case nos. 75040, 75041, 75043, and 75044 filed their own cross-motions for summary judgment against appellee. The trial court granted appellee's summary judgment motion and denied the cross-motions for summary judgment against appellee. Appellants filed separate appeals from the order of the trial court granting summary judgment in favor of appellee. The resulting six cases are hereby consolidated for disposition in this single opinion.

1. Appellants first urge that, pursuant to certain provisions of federal aviation law, appellee has bound itself to provide coverage. However, the provisions of federal law upon which appellants rely apply only to interstate flights. If the possibility exists that air transportation services will cross state lines, then the air carrier must secure "liability protection for bodily injury and property damage *in the event of such interstate travel and to avoid [federal] sanctions. . . .* [The air carrier is required to be in] compliance with [federal] requirements for any air taxi service *where interstate operations may be involved."* (Emphasis supplied.) *Coren v. Puritan Ins. Co.*, 184 Ga. App. 667, 669 (2) (1987). That the fatal crash in question was an intrastate flight is uncontroverted in the record. Therefore, the issue of the extent to which coverage would be afforded must be determined on the basis of the policy as interpreted by applicable Georgia law. See *Coren v. Puritan Ins. Co.*, supra at 669 (2).

2. Appellants contend that the appellee is bound by the pilot clause language which appears on the binder form issued to ACES rather than that which appears in the policy. "A binder is a contract of insurance in praesenti; temporary in its nature, intended to take

the place of an ordinary policy until the same can be issued. It is a short method of issuing a temporary policy for the convenience of all parties, to continue, unless sooner canceled, until the execution of a formal policy . . . '[A binder is] . . . itself a contract — temporary, sketchy, and informal, but a contract notwithstanding. [Cit.] Usually it fixes the term and coverage of the policy, but by express reference leaves the details of the contract to the latter. [Cits.] Hence *as to such details the contemplated policy rather than the binder is the determinative document.*' [Cit.]" (Emphasis supplied.) *Fort Valley Coca-Cola Co. v. Lumbermen's Mut. Cas. Co.*, 69 Ga. App. 120, 124 (24 SE2d 846) (1943). See also *Cincinnati Ins. Co. v. Stuart*, 139 Ga. App. 80, 81-82 (1) (227 SE2d 771) (1976).

Appellants urge, however, that the binder form was, in fact, itself a policy of insurance rather than a mere binder. In one place on the original form the following appears: "binder No. ___." However, the word "binder" had been stricken and the term "assigned policy" inserted in its place, so that the form read: "assigned policy No. ___." As the result of this alteration, appellants contend that the binder was itself a formal policy and that the pilot clause typed on the binder form was therefore a policy provision which could not be changed without the consent of the insured. See *Broome v. Mut. of Omaha Ins. Co.*, 119 Ga. App. 443, 446 (2) (167 SE2d 607) (1969).

However, the alteration did not purport to change the very nature of the document from a temporary binder to a formal insurance policy. On its face, the document is clearly shown to be a mere temporary binder rather than a formal insurance policy, and this is made manifest by its language, including among others, the following reference: "[u]nless *this binder* is replaced by the issuance of policy. . . ." (Emphasis supplied.) Since a formal insurance policy was issued before the crash of the aircraft, it is the language of the pilot clause in that formal policy which controls. Compare *International Indem. Co. v. McKeever*, 174 Ga. App. 871 (331 SE2d 909) (1985) (holding that where the incident giving rise to the claim occurs before the policy is issued the language of the binder controls). Accordingly, whether or not the language of the pilot clause in the binder was ambiguous or in conflict with the language of the policy are issues which need not be addressed.

3. On the date of the crash, the pilot clause of the policy declaration stated as follows:. "PILOT CLAUSE: Only the following pilot or pilots holding valid and effective pilot and medical certificates with ratings as required by the Federal Aviation Administration for the flight involved will operate the aircraft in flight: 1. Pilots who must have a commercial or airline transport certificate with an instrument rating and a minimum of 2000 logged pilot hours of which 250 hours have been in turbine aircraft and are graduates of the ground and

flight training school conducted by the manufacturer or an entity under contract to it for the [Cessna 208 Caravan] aircraft . . . otherwise Tom Beaudrot. 2. A two person crew consisting of: A. *Pilot in command*: [same as 1 above]. B. *Co Pilot*: David Williams."

"A provision in the policy that the aircraft should be piloted only by the named insureds or a qualified private or commercial pilot with a minimum of 200 logged hours as a pilot in command of aircraft, 10 hours of which must have been in a Cessna 172 or aircraft of similar type, and who has a valid and effective pilot certificate with proper rating as required by the Federal Aviation Agency for the flight involved, is a valid and binding one." *Grigsby v. Houston Fire &c. Ins. Co.*, 113 Ga. App. 572, 573 (2) (148 SE2d 925) (1966). See also *Ranger Ins. Co. v. Columbus-Muscogee Aviation*, 130 Ga. App. 742, 745 (4) (204 SE2d 474) (1974) (holding that where the pilot of the plane at the time of the crash did not possess a valid medical certificate as required by the "Pilot's Clause" summary judgment for the insurer was mandatory); see also *Atlanta Air Fleet v. Ins. Co. of N. America*, 130 Ga. App. 15 (202 SE2d 192) (1973) (upholding the validity of a "Pilot's Clause" requirement that the pilot in command be properly certificated and rated for the particular aircraft). In the instant case, the policy requirement that pilots must be graduates of the manufacturer's ground and flight training school is valid. Such a provision, like those previously held to be valid, "had an obvious relation to the degree of risk or hazard assumed by the insurer. . . ." *Atlanta Air Fleet v. Ins. Co. of N. America*, supra at 16.

Appellants urge that this requirement is void because no manufacturer's flight school existed from which a pilot could graduate and, therefore, the requirement could not be met. However, the record shows that the manufacturer did operate a pilot-training program under the name "Caravan I Flight Crew Training," which program was designed to provide training for the type of aircraft in question. It is also clear from the record that "Caravan I Flight Crew Training" was the *only* ground or flight training for the particular make and model of aircraft that was offered by the manufacturer, and that there was no other entity under contract to the manufacturer to provide such training. Accordingly, it is clear that "Caravan I Flight Crew Training" was "*the* ground and flight training school conducted by the manufacturer or an entity under contract to it for the [Cessna 208 Caravan] aircraft" referred to in the policy declarations. (Emphasis supplied.) At least two of the pilots employed by ACES were graduates of the "Caravan I Flight Crew Training" course. However, Mr. Steve Wilson, the pilot of the aircraft at the time of the crash, had not attended that training program and was not a graduate thereof. That actual flight training may not have been a mandatory part of the curriculum of the "Caravan I Flight Crew Training" does not ob-

viate the fact that it was *the* manufacturer's ground and flight training school for the particular aircraft. The pilot clause of the policy requires graduation from *the* manufacturer's ground and flight training school, and it does not expressly require that there be a specified amount of either ground training or flight training. Rather, the pilot clause leaves the requirements for graduation or certification to the manufacturer of the aircraft.

The fact that there were employees of ACES who were graduates of the manufacturer's only flight crew training program for the make and model aircraft involved in the crash negates appellants' argument that the pilot training requirement of the pilot clause of the policy was void because it could not be satisfied. Accordingly, the trial court did not err in granting summary judgment in favor of appellee in that it was established that, in violation of the pilot clause of the policy, the pilot at the time of the crash was not a graduate of the manufacturer's ground and flight training school.

4. Appellants in case nos. 75040, 75041, 75043, and 75044 enumerate as error the denial of their cross-motions for summary judgment. However, in light of our holding in Division 3 that the trial court did not err in granting summary judgment in favor of appellee, it follows that the trial court did not err in denying these appellants' cross-motions for summary judgment.

These appellants also enumerate as error the trial court's denial of their motions to compel discovery of the investigatory file prepared by Aviation Office of America (AOA) following the crash. The trial court made specific findings that AOA was the agent of appellee, and that AOA's investigatory file was prepared in anticipation of this litigation. The trial court's order also recites ample evidence to support its finding that the requested material comes within the ambit of OCGA § 9-11-26 (b) (3), and the trial court correctly held that discovery of such material could not be had in the absence of a showing of substantial need and undue hardship. See *Tobacco Rd. v. Callaghan,* 174 Ga. App. 539 (330 SE2d 768) (1985); *Warmack v. Mini-Skools,* 164 Ga. App. 737, 738-740 (2) (297 SE2d 365) (1982); *Georgia Intl. Life Ins. Co. v. Boney,* 139 Ga. App. 575, 580-582 (3) (228 SE2d 731) (1976). The trial court's finding that appellants had "not made such an affirmative showing of need" is not clearly erroneous, and therefore, the denial of the motion to compel discovery was not error.

*Judgments affirmed. Banke, P. J., and Benham, J., concur.*

DECIDED NOVEMBER 2, 1987 —
REHEARING DENIED DECEMBER 2, 1987 —

*John A. Howard,* for appellants (case no. 75040).
*William C. Lanham, Clark H. McGehee,* for appellants (case no.

75041).

*Gregory T. Presmanes, James G. Jackson,* for appellants (case no. 75042).

*Nicholas C. Moraitakis,* for appellant (case no. 75043).

*S. Phillip Brown,* for appellants (case no. 75044).

*John W. Henderson, Jr., H. Brian Sams,* for appellants (case no. 75045).

*Sewell K. Loggins, John J. Wiles,* for appellee.