## A96A1156. BROWN v. JMIC LIFE INSURANCE COMPANY.
### (474 SE2d 645)

BIRDSONG, Presiding Judge.

Jean J. Brown appeals the trial court's grant of JMIC Life Insurance Company's (JMIC) motion for summary judgment. She enumerates two errors. *Held*:

1. In her first enumeration of error, Brown contends the trial court erred in granting summary judgment to JMIC. We disagree.

In connection with her purchase of an automobile, Brown applied to JMIC for credit disability insurance. The application provided in pertinent part: "To the best of my knowledge and belief, during the past one (1) year, I have not been treated for . . . any disease of the . . . circulatory system" and "I understand that to be eligible for the insurance applied for, the foregoing representations must be true and correct. If the foregoing representations are not true, I am not eligible for the insurance for which application is made."

JMIC issued a policy certificate to Brown, naming Toyota Motor Credit Corporation (Toyota) the first beneficiary. World Omni Financial Corporation (World Omni), the servicing agent for Toyota, then purchased the retail installment contract bought by Brown. Part of the amount financed in the contract and paid by World Omni was a premium totaling $1,799.12 for a credit life and disability insurance

policy issued to appellant Jean Jones Brown.

Part III of the retail installment contract signed by Brown provided in pertinent part: "To secure such payment, you grant us a purchase money security interest under the Uniform Commercial Code in the collateral, in all proceeds of the collateral, and in all accessories, equipment, and replacement parts installed in the collateral. Insurance policies or service contracts in which we (including an assignee) are named as beneficiary or loss payee, including any proceeds of such insurance or service contracts and/or refunds of unearned premiums or charges, are assigned as additional security for the obligation." The retail installment contract further provided: "Insurance or Service Contract Charges Returned. . . . Any refund of optional insurance or service contracts obtained by us will be credited to your account. Credits to your account will include both the amounts received by us and the unearned finance charges on those amounts. These credits will be applied to as many of your installments as they will cover, beginning with the final installment."

Brown later submitted a total disability claim for a complication of severe vascular disease (a disease of the circulatory system). JMIC denied benefits to Brown because during the one-year period prior to the purchase of the disability policy, Brown was taking prescription medicine for the treatment of vascular disease. In Brown's suit against JMIC, JMIC was granted summary judgment by the trial court, as OCGA § 33-24-7 (b) (2) provides that misrepresentation, omissions, concealment of facts, and incorrect statements are grounds for voiding a policy if such are material either to the acceptance of the risk or to the hazard assumed by the insurer.

The standard of review of the trial court's grant of JMIC's motion for summary judgment is a de novo review of the evidence to determine whether there is any genuine issue of material fact as to the elements required to establish the causes of action stated by Brown in her complaint. *Artlip v. Queler*, 220 Ga. App. 775 (470 SE2d 260). To obtain summary judgment, JMIC as the moving party must demonstrate that there is no genuine issue of material fact and that the material evidence, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56. See generally *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474).

Misrepresentations, omissions, concealment of facts, and incorrect statements do not prevent a recovery under an insurance policy unless they are material either to the acceptance of the risk or to the hazard assumed by the insurer. OCGA § 33-24-7 (b) (2). A material misrepresentation is one which would influence a prudent insurer in determining whether to accept the risk or in fixing the amount of the premium in the event of such acceptance. *Haugseth v. Cotton States Mut. Ins. Co.*, 192 Ga. App. 853 (386 SE2d 725). Whether Brown was

treated during the one-year period preceding her application for insurance was material either to the acceptance of the risk or to the hazard assumed by the insurer, as the undisputed evidence shows Brown's application would not have been approved and a policy would not have been issued had JMIC known that Brown had been taking prescription drugs for a disease of the circulatory system. Thus, the issue presented on appeal is whether Brown was "treated" for a disease of the circulatory system during the one year preceding her application for insurance; i.e., whether Brown's taking of medicine prescribed for a circulatory system disease over one year before she signed the insurance application constitutes treatment of a circulatory disease.

In determining this issue, we must define the term "treated." When construing contracts, if the terms used are clear and unambiguous, they are to be taken and understood in their plain, ordinary, and popular sense. *Bergan v. Time Ins. Co.*, 196 Ga. App. 78, 80 (395 SE2d 361), citing *Henderson v. Henderson*, 152 Ga. App. 846 (1), 847 (264 SE2d 299). Dictionaries supply the plain, ordinary, and popular sense. *Bergan*, supra at 80. "Treat" is defined as "to care for (as a patient or part of the body) medically or surgically; deal with by medical or surgical means; give a medical treatment to." Webster's Third New International Dictionary. "Treatment" is defined as "the action or manner of treating a patient medically or surgically" (Webster's, supra); and is a broad term covering all the steps taken to effect a cure of an injury or disease; the word includes examination and diagnosis as well as application of remedies. *Beggs v. Pacific Mut. Life Ins. Co.*, 171 Ga. App. 204, 205-206 (318 SE2d 836), citing Black's Law Dictionary (4th ed.), p. 1673.

Here, it is undisputed that Brown was taking prescription medication specifically for a disease of the circulatory system. Certainly taking prescription medicine directed toward the relief of a circulatory disease qualifies as being "treated" for such disease utilizing the word's ordinary and popular sense. Thus, as Brown was treated for a disease of the circulatory system during the year preceding her application for insurance and as JMIC would not have issued a policy to Brown had they known about this treatment, Brown made a material misstatement on her insurance application. Accordingly, JMIC has demonstrated that there is no genuine issue of material fact and that the undisputed material facts, viewed in the light most favorable to Brown, warrant judgment for JMIC as a matter of law under OCGA § 33-24-7 (b) (2).

2. As we affirm the trial court's grant of summary judgment to JMIC, Brown's second enumeration of error stating that the trial court erred in not ruling on Brown's motion for partial summary judgment is without merit.

*Judgment affirmed. Blackburn, J., concurs. Beasley, C. J., concurs specially.*

BEASLEY, Chief Judge, concurring specially.

I agree that because the insurance applicant was taking physician-prescribed medication for her disease of the circulatory system, she was being treated for it and was required to answer affirmatively on the application.

The majority opinion relies on two dictionary definitions for the meaning of the verb in the insurance application. One is from Black's Law Dictionary (4th ed.) as quoted in *Beggs v. Pacific Mut. Life Ins. Co.*, 171 Ga. App. 204, 205-206 (318 SE2d 836) (1984). But in *Beggs* the Court rejected that definition as being broader than accepted under Georgia law. The Court applied instead, as governing, the narrower definition from the whole court case of *Mut. Life Ins. Co. &c. v. Bishop*, 132 Ga. App. 816, 818 (2) (209 SE2d 223) (1974).

*Bishop* involved a group hospitalization insurance policy which excluded coverage for certain "medical care or treatment." The Court ruled: "These words generally refer to something done in the application of the curative arts, whether by drugs or other therapy, with the end in view of alleviating a pathological condition. Thus, surgery, in its extended sense, may constitute 'care and treatment' when a mere examination or evaluation does not." Id. The Court held, by a bare majority, that two preoperative visits to the doctor for diagnostic and evaluation purposes only did not constitute "medical care or treatment" so as to exclude coverage. Four judges dissented, and although they agreed that the word "treatment" as used in the policy was not a technical word and was to be given its ordinary meaning in its common, plain, ordinary and usual sense, and a reasonable scope, it included the preliminary examination, diagnosis and preparation for cure.

Despite the rejection of the Black's Law Dictionary definition by the majority in *Bishop*, a division of the Court applied that definition the following year in *Young v. Yarn*, 136 Ga. App. 737, 738 (1) (222 SE2d 113) (1975). It construed the Georgia informed consent statute's requirement of disclosure of "treatment or course of treatment" not to include risks of treatment.

As was done in *Beggs*, we must follow *Bishop* and not repeat the error in *Young*. In this particular case, the result is the same, because Brown was being treated for a vascular disease, a disease of the circulatory system, by way of medication prescribed by her physicians Dr. Kirschbaum and Dr. Lamis. This constituted "something done in the application of the curative arts, whether by drugs or other therapy, with the end in view of alleviating a pathological condition." *Bishop*, supra at 818. The fact that she had not visited the

doctors in the year preceding her submission of the application for insurance, or that they had not made the prescription during that period, did not mean that she had not "been treated" during that period. It is undisputed that she had been, and she still was, taking the medication they prescribed.

DECIDED AUGUST 5, 1996 —
RECONSIDERATION DENIED SEPTEMBER 5, 1996 —

*Glenville Haldi*, for appellant.
*Levine & Block, Stephen H. Block*, for appellee.