A97A1803. BROWN v. PIGGLY WIGGLY SOUTHERN, INC. et al.
(493 SE2d 196)

BLACKBURN, Judge.

This is the second appearance of this case before us. In *Piggly Wiggly Southern v. Brown*, 219 Ga. App. 614 (468 SE2d 387) (1995), this Court affirmed the trial court's denial of summary judgment to Piggly Wiggly Southern, Inc. and Gilbert Braddock[1] (collectively Piggly Wiggly) on Margaret Brown's claim for damages she allegedly suffered when she slipped and fell in a puddle of water at a Piggly Wiggly grocery store. Upon remittitur to the trial court, Piggly Wiggly filed an amended motion for summary judgment, submitting two additional affidavits. The trial court thereupon granted Piggly Wiggly's amended motion for summary judgment, and Brown appeals.

1. Brown contends that the law of the case rule precluded the trial court from granting Piggly Wiggly's amended motion for summary judgment. "[T]he law of the case rule has formally been abolished except as it applies to rulings by one of the appellate courts; they are binding in all subsequent proceedings." *Continental Corp. v. Dept. of Transp.*, 185 Ga. App. 792, 793 (1) (366 SE2d 160) (1988). The rule is set forth in OCGA § 9-11-60 (h), which states that "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be."

"An exception to the rule that will permit issues to be relitigated after appeal is when the evidentiary posture of the case changes. . . . The evidentiary posture of a case changes so as to bar application of the law of the case rule . . . when the original evidence submitted is found to be insufficient, and the deficient evidence is later supplemented." *McLean v. Continental Wingate Co.*, 222 Ga. App. 805, 807 (1) (476 SE2d 83) (1996). "Thus, if subsequent to an appellate decision, the evidentiary posture of the case changes in the trial court, the law of the case rule does not limit or negate the effect that *such change* would otherwise mandate." (Emphasis supplied.) *Modern Roofing &c. v. Owen*, 174 Ga. App. 875, 876 (1) (332 SE2d 14) (1985).

---

[1] Our previous opinion referred to Braddock as "Gilbert Bradley," the name used in many of the pleadings below.

In this case, Piggly Wiggly submitted two additional pieces of evidence following our earlier decision. First, it submitted an additional affidavit from its former employee James Hampton. This affidavit clarified and explained his prior affidavit, which had been submitted by Brown and which we relied upon in affirming the denial of summary judgment. See *Piggly Wiggly*, supra at 616. Second, it submitted the affidavit of its former manager, Gilbert Braddock, regarding Piggly Wiggly's inspection procedures at the time of the incident.

Accordingly, as Piggly Wiggly has expanded the evidentiary record, we must consider whether the new evidence *demands* summary judgment for Piggly Wiggly. Our review is limited to the effect of the new evidence, and we are precluded from reconsidering previously decided issues except to the extent of the additional evidence. See *Modern Roofing*, supra at 875-876 (1) (" ' "all questions as to . . . the effect of evidence adjudicated by this court are binding as the law of the case on this court and . . . in the court below, *unless* additional pleadings and evidence prevail to change such adjudications" ' ").

2. "In order to recover for a slip and fall due to a foreign substance on the floor, the plaintiff must show that the defendant had actual or constructive knowledge of the hazard, and that the plaintiff was without equal knowledge of such. *Alterman Foods v. Ligon*, 246 Ga. 620 (272 SE2d 327) (1980)." (Punctuation omitted.) *Piggly Wiggly*, supra at 615-616.

Brown's lack of knowledge of the water on the floor was resolved in Brown's favor in our previous decision, in which we held that "we cannot say (as a matter of law) that the small puddle of water which caused Margaret Brown's fall was such an open and obvious danger that the average shopper, in the exercise of ordinary care, would have observed the puddle and avoided it." Id. at 618. The only new evidence arguably touching on this issue is Hampton's second affidavit, in which he stated that "[t]here was nothing that would have prevented anyone who was looking at the floor from seeing the puddle as they approached." However, this statement is merely Hampton's conclusion and adds nothing material to the facts in the record when we issued our earlier decision. Indeed, Brown stated in her deposition that nothing would have prevented her from seeing the puddle if she had looked down. Notwithstanding this statement, we held that there was a factual issue as to Brown's exercise of ordinary care, stating that "[a]n invitee is simply not required to look for defects continuously and without interruption." (Punctuation omitted.) Id. at 617. Accordingly, as Piggly Wiggly has not materially added to the record on this issue, the law of the case rule precludes us from revisiting this issue in this appeal. See *Modern Roofing*, supra at 875 (1) (law of the case rule applicable to appellate court as well as court below); see also Gregory, Ga. Civil Practice (1990), § 7-5, p. 566 ("once an appel-

late [court] announces a decision on an issue that is the law of that case not only for the trial court but for the appellate court as well").

3. (a) The sole question therefore becomes whether or not Piggly Wiggly had actual or constructive knowledge of the water on the floor. In our earlier opinion, we held that there was evidence "that a Piggly Wiggly employee had actual knowledge of the hazard which caused Margaret Brown's fall." *Piggly Wiggly*, supra at 616. This holding was based upon the first affidavit of James Hampton, a Piggly Wiggly bag boy, stating that "I remember seeing water on the floor in the produce section on the morning Margaret Brown fell." Id. at 622. Drawing all inferences in favor of Brown, we held that this affidavit constituted evidence of Hampton's actual knowledge of the water puddle. After our decision, however, Hampton submitted a second affidavit clarifying that "I did not see any ice or water on the store's floor . . . the morning of September 14, 1991, *before* I heard Margaret Brown say that she had fallen in some water." Hampton testified that the statement in the original affidavit referred to the water he saw *after* Brown fell.

Hampton's earlier affidavit, standing alone and viewed in a light most favorable to Brown, supported an inference that he had actual knowledge of the water on the floor before Brown fell. The second affidavit makes it clear that no such inference can be drawn. The second affidavit does not contradict the first so as to create a question of fact on this issue, since the first affidavit does not state that Hampton saw the water before the fall. Accordingly, under the present state of the record, there is no evidence that Piggly Wiggly had actual prior knowledge of the hazard.

(b) We must now consider whether there is evidence that Piggly Wiggly had constructive knowledge of the water. As we held in our earlier opinion, " '[c]onstructive knowledge may be established by showing that an employee of the proprietor was in the immediate area of the hazardous condition and could have easily seen the substance or that a foreign substance remained on the floor for such a time that ordinary diligence by the proprietor should have effected its discovery. *Jester v. Ingles Market*, 206 Ga. App. 327, 328 (425 SE2d 323) (1992).' *Foodmax v. Terry*, 210 Ga. App. 511 (1) (436 SE2d 725)." *Piggly Wiggly*, supra at 617, n. 3.

In our previous decision we found there was evidence of constructive knowledge under either of these alternatives. With respect to the presence of an employee in the vicinity, we noted that "Margaret Brown testified that a Piggly Wiggly employee was near the area where she fell, loading ice into a container, and Brown's diagram of the store shows that the presumably busy cash register area was near the area where she fell." Id. In his new affidavit, Braddock stated that the ice machine was located in the stock room behind two

swinging saloon-type doors, and that "any employee who might have been working at the ice machine in the stock room at the time plaintiff fell would not have had a view of the floor in the area where plaintiff fell." However, this testimony does not materially add to what was in the record when we issued our original decision. In her deposition testimony, which was before us in the prior appeal, Brown testified that, while she was on the ground after she fell, she saw the employee shoveling ice through the swinging doors in the back area. As Braddock's new testimony is essentially cumulative of evidence already in the record, Piggly Wiggly has not provided new evidence which demands a different result and authorizes this Court to avoid application of the law of the case rule in this matter. Furthermore, since Brown could see the employee from the floor where she fell, a jury question remains as to whether the employee could see the floor, notwithstanding Braddock's testimony to the contrary.

With respect to the amount of time the water was on the floor, Hampton testified in his original affidavit that, on the morning in question, he saw the produce man icing down the produce section around 9:00 a.m., one to two hours before the accident. He noted that on several occasions he had seen chunks of ice fall to the floor while being transported or while the produce man was pouring ice under the fruit and vegetable tray. He also stated that he had seen puddles in and around the produce section caused by chunks of ice falling to the floor and melting, and that on more than one occasion such water had remained on the floor for a long time.

Based on this evidence, we held that "[t]here is also proof which would authorize a finding that this puddle was caused by melted ice dropped by the man in charge of the produce section [and] that this patch of melted ice water had been on the floor for at least two hours before Margaret Brown's fall (or at least long enough for the ice to melt)." Id. at 617-618. The new evidence submitted by Piggly Wiggly does not eliminate the right of the jury to draw such an inference from the evidence. Although Hampton states in his second affidavit that he did not see ice fall to the floor while the produce man was icing down the produce counter on the morning in question, he does not affirmatively state that no such ice fell, nor does he indicate that he was watching the produce man at all times and would have been able to determine whether or not any ice fell onto the floor. It is clear from Hampton's testimony that ice often fell to the floor during the icing process, and that it often remained on the floor for long periods of time. Given the fact that there was a water puddle on the floor in the produce section, the jury could conclude that the water was caused by ice dropped by the produce man which had been on the floor long enough to melt before the incident. Accordingly, the jury could conclude that the water had been on the floor for a sufficient

length of time to allow Piggly Wiggly to discover the hazard. Indeed, the jury could find that the water came to be on the floor through the direct actions of a Piggly Wiggly employee, and it therefore had immediate notice of the hazard and the need to clean it up. The fact that water often fell onto the floor during the icing process could also be considered by the jury in determining that Piggly Wiggly had a duty to neutralize such hazards as they occur.

In his affidavit, Braddock states that he walked the store's floor between 7:30 and 8:00 a.m. the morning in question and every hour thereafter, and that *he was not aware of any water* on the floor until after Brown fell. He does not state positively that there was no water present as he "walked" the floor, nor does he state that he specifically inspected the floors for the existence of water and found none. Nothing in Braddock's affidavit indicates that he inspected the portion of the floor where the water was in fact located. Indeed, Braddock does not even state that the floor was clean when he inspected it; he merely states that "my first knowledge of ice or water being on the floor was after plaintiff reported that she had fallen." In his deposition testimony, Braddock stated that "the usual procedure is, you know, like I say, approximately every hour is to go through and walk and look for anything across the ends of the aisles and up and down the aisles while I'm out with the customers and things like that. And anything that we see is cleaned up." It appears from Braddock's testimony that he merely walked through the store, casually looking for any problems between dealings with customers' questions, and that he did not pay any particular attention to the produce area, notwithstanding the regular dropping of ice in such area. Given the frequency with which water was spilled in the produce section, the difficulty in seeing water on the floor, and the fact that water often remained on the floor for long periods of time, the jury could conclude that a more thorough inspection of the produce section was required. Thus, even taking into consideration Braddock's new testimony, the jury would be free to conclude that the water was on the floor for a significant length of time and Braddock merely failed to observe it.

Furthermore, although Braddock claims in the affidavit that all employees were instructed to be on the lookout for spills or hazards, Hampton stated in his first affidavit that he was never instructed by Braddock to inspect for water or other substances on the floor. Hampton testified that water often remained on the floor for long periods of time, and that the puddle in which Brown slipped was not cleaned up for a long time after the accident. Accordingly, the jury would be free to disbelieve Braddock's testimony regarding Piggly Wiggly's inspection and cleanup procedures, or to find that Piggly Wiggly did not follow such procedures on the date in question.

For all of the above reasons, the new evidence submitted by

Piggly Wiggly does not expand the evidentiary posture of the case in such a material way as to require a different result from our earlier decision. Accordingly, the trial court erred in granting Piggly Wiggly's amended motion for summary judgment.

*Judgment reversed. Pope, P. J., and Johnson, J., concur.*

DECIDED SEPTEMBER 30, 1997.

*Walbert & Mathis, Charles A. Mathis, Jr., Thomas M. Jackson,* for appellant.

*Jones, Cork & Miller, Timothy Harden III,* for appellees.