**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 12, 2016**

# In the Court of Appeals of Georgia

A16A0643. LIMA DELTA COMPANY et al. v. GLOBAL    RI-022
    AEROSPACE, INC.

RICKMAN, Judge.

Global Aerospace, Inc. issued a broad horizon aviation insurance policy to Lima Delta Company, TridentAS,[1] and Socikat[2] to insure a Gulfstream G-IV aircraft (the "Policy"). The aircraft crashed while landing in the Democratic Republic of the Congo (the "DRC") on February 12, 2012. Approximately three months later, Global filed an action against the named insureds and other entities, seeking rescission based on alleged misrepresentations and fraud regarding where the aircraft would be based, ownership of the aircraft, and the primary use of the aircraft, and, alternatively, a

---

[1] According to one of Trident's co-owners, TridentAS is not a legal entity, and Trident Aviation Services LLC is the correct name of the entity.

[2] Socikat was misspelled in the policy as Sokicat.

declaratory judgment that no coverage existed for the accident because the pilots did not have the qualifications required by the Policy. Lima Delta, Trident, and Socikat filed a motion to dismiss for lack of personal jurisdiction. The trial court denied the motion, and this Court affirmed the trial court's decision in *Lima Delta Co. v. Global Aerospace, Inc.*, 325 Ga. App. 76 (752 SE2d 135) (2013).

Lima Delta, Trident, and Socikat answered the complaint and filed a counterclaim for breach of contract, which they later amended. Following extensive and highly combative discovery,[3] Global filed a motion for summary judgment on all counts of its complaint and Lima Delta, Trident, and Socikat filed a motion seeking summary judgment on Global's complaint and their counterclaim. The trial court granted Global's motion in part, concluding that Global had grounds to rescind the Policy based on the insureds' misrepresentations and omissions and that Global was entitled to a declaratory judgment that the Policy did not cover the accident based on non-compliance with the Policy's open pilot warranty provision.[4] The trial court

[3] We note with chagrin that in this voluminous record, comprising 77 volumes and more than 20,000 pages, numerous volumes are dedicated solely to discovery disputes and that depositions on both sides are significantly prolonged by unnecessary arguments between counsel and irrelevant and/or repetitive questioning.

[4] The trial court concluded that questions of fact remained regarding Global's claim for fraudulent misrepresentation.

2

denied the motion filed by Lima Delta, Trident, and Socikat. On appeal, Lima Delta, Trident, and Socikat contend that the trial court erred by (1) granting Global's motion for summary judgment, (2) granting Global's motion to strike their amended counterclaim, and (3) denying their motion to apply Delaware law. For reasons that follow, we affirm.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation omitted.) *Burkett v. Liberty Mut. Fire Ins. Co.*, 278 Ga. App. 681, 681-682 (629 SE2d 558) (2006).

So viewed, the evidence shows that Trident, a company based in Delaware, is in the business of buying and selling aircraft and providing support to its customers and their aircraft. Trident bought the G-IV on behalf of Socikat, a mining company based in the DRC. The G-IV was then transferred to Lima Delta, a Delaware corporation, as owner trustee, and Socikat remained the beneficial owner of the

3

aircraft. Trident obtained insurance for the aircraft through Wells Fargo Insurance Services, Trident's broker.

Initially, the aircraft was insured by another insurance carrier. One of Trident's co-owners, Dan Piraino, subsequently contacted Lauren Hanes, an account manager at Wells Fargo and informed her that the aircraft needed coverage for the European Union. When Hanes learned that the existing carrier could not provide the necessary coverage, she contacted Global and a third insurance carrier about a new policy for the aircraft. Wells Fargo worked with Global to obtain the Policy for Trident and the other named insureds. The Policy covered the period from June 22, 2011 to June 22, 2012.

The Policy contains an open pilot warranty provision, which states that the "policy shall not apply while a *scheduled aircraft* is in *flight* unless operated by any appropriately rated two pilot flight crew," including a pilot in command and a second in command, both of whom are required to have "completed the manufacturer's recommended ground and flight training school for the applicable make and model aircraft within the preceding twelve (12) months of any date he or she acts as *pilot in command* [or second in command]." Under the Policy, "flight" means, "as respects

a fixed wing aircraft, from the time commencing with the actual takeoff run until the aircraft has completed its landing roll."

1. Lima Delta, Trident, and Socikat contend that the trial court erred by concluding that the open pilot warranty provision should be treated as an exclusion despite its location in the Declarations section of the Policy rather than the Exclusions section. They argue that the location of the provision creates an ambiguity that must be construed against Global as the insurer.

> Insurance policies are construed in favor of the insured and against the insurance company. Insurance in Georgia is a matter of contract and the parties to the contract of insurance are bound by its plain and unambiguous terms, and, when the words in an insurance policy are plain and obvious, they must be given their literal meaning. Further, insurance contracts are interpreted by ordinary rules of contract construction and exclusions are to be strictly construed. Also, an insurance policy is simply a contract, which should be construed as any other type of contract. The construction of an unambiguous contract is a question of law for the court.

(Citations and punctuation omitted.) *State Farm Fire & Cas. Co. v. Goodman*, 259 Ga. App. 62, 63-64 (2) (576 SE2d 49) (2002).

Here, the open pilot warranty provision of the Policy is clear – the Policy will not apply while a scheduled aircraft is in flight unless both the pilot in command and

5

the second in command have completed the manufacturer's recommended ground and flight training school for the applicable make and model aircraft within the 12 months preceding the date of the flight. It is undisputed that one of the pilots on the February 12, 2012 flight had not completed the required training within the 12 months preceding the date of the flight. Trident's co-owners testified that they contacted Hanes at Wells Fargo and requested a waiver of this requirement so that both pilots could train together, and that Hanes said that she had taken care of it. But Trident has not pointed to any document showing that Global agreed to any such waiver or extension of the training requirement, and the Policy specifically provides that its terms "can be amended or waived only by endorsement issued . . . by Global Aerospace, Inc. and made a part of this policy." No such endorsement was made a part of the Policy.

Despite the plain language of the Policy, the insureds take issue with the fact that the open pilot warranty provision is located in the Declarations section of the Policy and is not specifically labeled an "exclusion." We have previously upheld as valid pilot clauses requiring pilots to have certain training and experience that were located in the declarations section of an aviation policy. See *Howell v. U. S. Fire Ins. Co.*, 185 Ga. App. 154, 157 (3) (363 SE2d 560) (1987) (pilot clause of policy

6

declaration that required pilots to be graduates of the aircraft manufacturer's ground and flight training school was valid); see also *Ranger Ins. Co. v. Columbus-Muscogee Aviation, Inc.*, 130 Ga. App. 742, 744 (4) (204 SE2d 474) (1974) (pilot clause in policy declarations that required valid medical certificate was valid requirement and pilot's failure to comply warranted summary judgment for insurer). And the insureds have failed to cite any case that supports their position that the location of the provision creates an ambiguity, where, as here, the terms of the policy provision at issue are clear and ambiguous.

Citing OCGA § 33-24-30 (c), the insureds also argue that Global was required to include "conspicuous notice" that the Policy contained exclusions related to pilot certification or experience. The conspicuous notice requirement, however, is only applicable to policies issued on or renewed after July 1, 2015. Ga. L. 2015, p. 824, § 2. Because the Policy was issued in 2012, we need not determine whether the Policy language provided the conspicuous notice contemplated by the statute.

We conclude that summary judgment was properly granted to Global because, at the time of the accident, one of the pilots had not completed the manufacturer's recommended ground and flight training school for the applicable make and model aircraft within the 12 months preceding the date of the flight, as required by the plain

7

language of the Policy.[5] See *Howell*, 185 Ga. App. at 157 (3); see also *Grigsby v. Houston Fire & Cas. Ins. Co.*, 113 Ga. App. 572, 573 (3) (148 SE2d 925) (1966) (loss was not within the coverage of the policy when insured aircraft was operated by pilot who had failed to make required number of takeoffs and landings within 90 days preceding flight and did not have valid medical certificate, as required for policy to apply).[6]

2. Lima Delta, Trident, and Socikat contend that the trial court erred by granting Global's motion to strike their amended counterclaim for bad faith penalties and attorney fees. The trial court granted the motion based on its determination that Global had grounds to deny coverage under the Policy provisions and to rescind the Policy due to material misrepresentations and omissions. Given our holding in Division 1 that the Policy did not apply to the accident, we affirm the trial court's ruling on Global's motion to strike the amended counterclaim.

---

[5] The insureds speculate that the pilots may have given each other training while flying the aircraft together, but there is no evidence that any such training met the requirements of the manufacturer's recommended ground and flight training school for the G-IV aircraft.

[6] Given our determination that the Policy did not apply to the accident at issue, we need not determine whether the trial court erred by granting summary judgment to Global on its rescission claim.

8

Although not separately enumerated as error, Lima Delta, Trident, and Socikat contend that the trial court "simply ignored the Insureds' counterclaim, motion for summary judgment, and summary judgment evidence that, even if, 'Global had grounds to deny coverage and to rescind the Policy,' Global is legally responsible for destroying at least $1,100,000.00 in the value of the engines and APU Global chose to leave in the DRC to deteriorate." In their motion for summary judgment, the insureds contend that Global stored the wreckage in non-climate controlled containers and then left the wreckage in the DRC to deteriorate, thereby entering into a bailment relationship with the insureds and wrongfully converting the wreckage in breach of the bailment.[7] This claim, however, is not asserted in either the initial counterclaim, which alleges a claim for breach of contract for denying benefits due under the Policy, or the amended counterclaim. Moreover, this

> completely new claim made for the first time in [a] motion for summary judgment does not satisfy even the liberal requirements of the Georgia Civil Practice Act for notice pleading because the [counterclaim] was not amended to add a new claim . . . against [Global], nor [was Global] given reasonable notice of the claim or opportunity to frame a responsive pleading to the claim. It follows that at the time summary

---

[7] The bailment and conversion claims are not specifically mentioned in the insureds' appellate briefs.

9

judgment was awarded on this claim, no viable claim for [damages related to the alleged destruction of the aircraft engines] existed against [Global].

(Citations and punctuation omitted.) *R. W. Holdco, Inc. v. Johnson*, 267 Ga. App. 859, 866 (2) (b) (601 SE2d 177) (2004).

3. Lima Delta, Trident, and Socikat contend that the trial court erred by denying their motion to apply Delaware law. We disagree.

In our prior opinion in this case, we noted that it appeared from the existing record that Georgia law would apply, but that if additional evidence affecting this question was produced during discovery, the trial court would decide in the first instance whether Georgia law should control this case. *Lima Delta Co.*, 325 Ga. App. at 83 (3), n.7. The trial court considered the additional evidence produced during discovery and found that it did not affect the validity of the original ruling by this Court.

> In contract actions such as this one, where the contract contains no choice of law provision, Georgia applies the rule of lex loci contractus. Under this rule, when a contract is made and to be performed in one state, its validity, nature, construction, and interpretation are governed by the substantive law of that state. When a contract is made in one state and is to be performed in another state, the substantive law

10

of the state where the contract is to be performed applies. . . . [B]ecause insurance contracts [like this one, which provided worldwide coverage,] often have no particular place where performance is contemplated, Georgia generally applies the law of the place where the contract was made.

(Citations and punctuation omitted.) *Lima Delta Co.*, 325 Ga. App. at 83 (3). "[T]o determine where a contract was made, the court must determine where the last act essential to the completion of the contract was done." (Citation omitted.) *Gen. Telephone Co. of the Southeast v. Trimm*, 252 Ga. 95 (311 SE2d 460) (1984). An "insurance contract is constructively made at the place where the contract is delivered." (Citations and punctuation omitted.) *Gen. Elec. Credit Corp. v. Home Indem. Co.*, 168 Ga. App. 344, 350 (2) (b) (309 SE2d 152) (1983).

Here, the Policy was delivered by Global to Wells Fargo in Atlanta, reviewed by Wells Fargo, and then mailed to Piraino in Delaware. In our prior opinion, we determined that Wells Fargo was acting as the agent of the insureds when it procured the Policy and that "Wells Fargo accepted delivery of the Policy on behalf of the insureds at its Atlanta office." *Lima Delta Co.*, 325 Ga. App. at 81-82 (1). The insureds argue that the trial court erred by accepting this ruling on the agency issue as the law of the case.

11

OCGA § 9-11-60 (h) provides that "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be."

> An exception to the rule that will permit issues to be relitigated after appeal is when the evidentiary posture of the case changes. The evidentiary posture of a case changes so as to bar application of the law of the case rule when the original evidence submitted is found to be insufficient, and the deficient evidence is later supplemented. Thus, if subsequent to an appellate decision, the evidentiary posture of the case changes in the trial court, the law of the case rule does not limit or negate the effect that *such change* would otherwise mandate.

(Citations and punctuation omitted; emphasis in original.) *Brown v. Piggly-Wiggly Southern, Inc.*, 228 Ga. App. 629 (1) (493 SE2d 196) (1997).

The parties have engaged in extensive discovery since our prior opinion was issued. We must consider whether the new evidence relied upon by the insureds requires reversal of the trial court's ruling on the motion to apply Delaware law. See *Brown*, 228 Ga. App. at 630 (1). "Our review is limited to the effect of the new evidence, and we are precluded from reconsidering previously decided issues except to the extent of the additional evidence." Id.

12

The insureds rely on testimony from employees of Wells Fargo that they did not consider themselves to be agents of the insureds. Specifically, Hanes, who had worked with Piraino for a number of years, testified that she did not consider herself to be an agent of Piraino or any of the companies with which he was affiliated; instead, she was his broker. She further testified that she was not Global's agent, stating, "I'm not an agent." The head of Wells Fargo's aviation group testified that he did not consider Wells Fargo to be an agent of the insureds or Global because, "[w]e're brokers." The distinction he drew between acting as a broker and acting as an agent was based on "what category you fit in from your licensing standpoint." Although this lay testimony does make a distinction between Wells Fargo's role as an insurance broker versus an insurance agent, it does not address the legal issue of whether Wells Fargo was an agent of the insureds.

As noted in our prior opinion, "independent agents or brokers are generally considered the agent of the insured, not the insurer." (Punctuation omitted.) *Lima Delta Co.*, 325 Ga. App. at 81 (1), citing *Pope v. Mercury Indem. Co. of Georgia*, 297 Ga. App. 535, 540 (3) (677 SE2d 693) (2009). Our prior opinion also recounts Wells Fargo's long-standing relationship with Piraino and corporations in which he had an interest and Wells Fargo's actions in obtaining insurance for this aircraft, which led

13

to the conclusion that Wells Fargo was acting as the agent of the insureds in procuring the Policy. *Lima Delta Co.*, 325 Ga. App. at 81 (1). Because "[the insureds have] not materially added to the record on this issue, the law of the case rule precludes us from revisiting this issue in this appeal." *Brown*, 228 Ga. App. at 630 (2).

The insureds also argue that the Policy was not complete upon delivery because it was not valid until the insureds paid the premium, such that delivery would not constitute "the last act essential to the completion of the contract." But the Policy does not provide that it will not take effect until payment of the premium, and the payment of premiums is not a condition precedent to the creation of an insurance contract "unless by express terms of the policy or by necessary implication such payment is made a condition precedent to any liability of the insurer on the contract." (Citations omitted.) *American Intl. Life Ins. Co. v. Hartsfield*, 147 Ga. App. 213, 215 (2) (248 SE2d 518) (1978).[8]

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur.*

---

[8] The insureds' further argument that applying Georgia law instead of Delaware law has prejudiced them with respect to Global's rescission claim is moot given our determination that we need not address the rescission claim because the Policy does not apply to the accident.

14