## NATIONAL SURETY CO. v. EARL PARK STATE BANK.

### No. 4859.

Circuit Court of Appeals, Seventh Circuit.
March 25, 1933.

Frederick Van Nuys, George M. Barnard, and Raymond L. Walker, all of Indianapolis, Ind., for appellant.

Elmore Barce, J. Edward Barce, W. H. Isham, and William S. Isham, all of Fowler, Ind., for appellee.

Before ALSCHULER and EVANS, Circuit Judges, and FITZHENRY, District Judge.

EVANS, Circuit Judge.

The burglary insurance policy upon which this action was predicated covered loss by burglary "of money and securities feloniously abstracted during the day or night." The bank was burglarized in the early morning of May 9, 1929, and cash belonging to it and bonds belonging to customers were carried away by the burglars.

Appellant was promptly notified. It made an investigation and promptly paid appellee's cash loss. It did not, however, pay the loss suffered by the customers through the theft of their bonds nor the $150 damages to the building. It was conceded on the trial that the policy was in full force and effect at the date of the burglary and the loss occurred as found by the jury.

Appellant defends on two grounds: (a) The proof of loss of securities was not "furnished" within the sixty day period required by the policy; and (b) the record of the securities kept in the safe was not sufficiently accurate or complete to meet the requirements of the so-called "iron safe clause" of the policy.

When the bank's officer learned of the burglary on the morning after it occurred, he immediately notified appellant by long distance telephone. Its representative promptly appeared and took charge of the premises, made an inspection thereof, and checked up the losses. Four days later another representative of appellant arrived bearing a letter of introduction and stating that he was to audit the books and ascertain the amount of the loss.

Shortly thereafter appellant paid the loss which appellee suffered through the theft of its cash ($5,782).

As to the date of the proof of loss (as to the securities), appellant contends that it was received at the Chicago office July 29, 1929, having been mailed July 27, 1929, some eighteen days too late. Appellee on the other hand contends that the evidence was such as to require this fact issue to be submitted to the jury. It also contends that appellant

waived this provision of the policy, and the question of waiver was also properly submitted to the jury. The bill of exceptions does not contain the charge of the court to the jury, and it is therefore assumed that all issues were properly covered.

■ The evidence upon which appellee relies to show timely presentation of the proof of loss consisted of the oral testimony of its officer and appellant's admission appearing in a letter written by its general counsel. In this letter counsel for appellant said, "We are returning herewith statement furnished by you of Proof of Loss *sent under date of July 7, 1928.*" Appellant contends that the date was erroneous in two respects, one as to the day of the month and the other as to the year. Appellee admits there was an error as to the year, but asserts the day of the month was correctly stated.

The record discloses much confusion on the part of the witnesses on both sides as to the date thus stated. There can be no question as to the mistake in the year. The bank was not burglarized until 1929, and this letter unquestionably referred to the proof of the May 9, 1929 burglary loss which was given by appellee. One of appellee's witnesses, an officer, testified, "I don't believe I was mistaken when I said it (the date the proof of loss was mailed) was July 7th."

The evidence offered by appellant is persuasive, but considering the mistakes made, we are not prepared to say that error occurred in submitting the question to the jury. Fairmount Glass Works v. Cub Fork Coal Co., 53 S. Ct. 252, 77 L. Ed. ——, decided January 9, 1933.

In view of this conclusion, it is hardly necessary to comment on the evidence which tends to corroborate the contentions of the parties.

In the last analysis appellee's position can be sustained only by a finding that Childress, the cashier of the bank, committed perjury. The jury had the advantage of seeing and hearing this witness on the stand and therefore could better determine than we, the weight to be given his word.

■ We are also convinced that the court was required to leave to the jury the question of appellant's waiver of the proof of loss requirement within sixty days.

In reaching our conclusion on both issues (the date of the notice and the waiver of a strict compliance with the sixty day requirement), it is necessary to consider the acts and doings of both parties preliminary to the preparation and filing of the affidavits of the bond owners.

Appellee prepared on a blank furnished by appellant a proof of loss bearing date of May 16, 1929. In this proof of loss the claimant says that "on the 9th day of May, 1929, at about 3 A. M., a Burglary, Theft or Robbery occurred in the building known as No. —— Oak Street, in the City or Town of Earl Park, County of Benton, in the State of Indiana, by which property insured under said Policy was stolen to the amount of $5,-782.20 in actual cash, besides a lot of Bonds not set out here, as set forth in this statement, and the several schedules and papers hereto annexed, which we (known as the Assured) declare to be a just, true and faithful account of such loss." On the margin written with a pen were these words: "This is only proof of actual cash taken to amount of $5,782.20, and does not cover loss in Bonds or damage to other Items."

It was upon the receipt of this proof that Mr. Voigt of the appellant company made his second visit to the bank and Mr. Simpson, the adjuster, wrote his letter of May 21, from which we quote in part:

"In accepting our draft #1797 for $5951.20 you are not waiving any of your rights to make claim for damages to the bank premises.

"You are hereby authorized to proceed and have the damage made by the burglars repaired and then notify this company the amount you have paid to recondition the premises.

"We are enclosing herewith *additional* proof of loss blanks which we will thank you to fill out in duplicate and return to this office. On these proofs kindly list all bonds stolen and answer all questions. Upon receipt of same we shall give your claim further attention."

Appellant, in asking for "additional proof," inferentially admitted the giving of some proof of loss. It was evidently not satisfied, however, with the *quantum* or reliability of the proof which was first submitted respecting the stolen bonds, for it here asked for "additional proof" which consisted of answers to questions propounded as to such stolen bonds.

■ Upon the whole record a jury could hardly have found other than that appellant's representative was authorized to act as he did when he requested the bank's cashier to get affidavits from the owners even though it took considerable time to do so. The bonds stolen belonged to the depositors, not to the

bank. The cashier of the bank did not have complete information respecting the customers' losses. Any proof which the bank could have furnished at the time would necessarily have been somewhat uncertain and unsatisfactory. It was to avoid any possible overcharge that appellant's representative conferred with the bank's cashier. It was under these circumstances that the company's adjuster required appellee to secure the affidavits of the customers and fill out the "additional proof" of loss which supplied information of benefit to appellant and was necessary in order that it might inform itself as to the correctness of the claim. Appellant's agent was, therefore, acting within the scope of his authority when he asked for these affidavits, and it necessarily follows that to get the information he was authorized to say, "Take your time, get it right."

As to appellant's contention that the bank's records were not kept so as to permit the amount of the loss to be accurately determined therefrom, it is sufficient to observe that the bank was a small one. Its records were not kept as they would have been had it been a large city bank. The method of recording the withdrawal or replacement of bonds was crude. However, a substantial compliance with this requirement is all that is necessary. Liverpool & London & Globe Ins. Co. v. Kearney, 180 U. S. 132, 21 S. Ct. 326, 45 L. Ed. 460. Appellee's book showed the names of the owners and the denomination of each government bond. The record thus preserved is before us as an exhibit. The witnesses testified that the bonds belonging to the different owners were placed in different envelopes with the name of the owner written thereon. The records show the par value of the bonds. Many of them at least showed the number of the bond, as well as the government designation of the issue. Written in pencil opposite the name of seven different bonds was the word "out." Opposite the figures of several bonds was the designation "X." These designations were satisfactorily explained. Considering all of the evidence, oral as well as documentary, we have no hesitancy in saying that the jury was amply justified in finding that the records were kept as required by the policy.

The assignment of error which deals with the reception of evidence over appellant's objection, we have also duly considered. We are satisfied that it was properly admitted. Moreover, had its admission been erroneous, the error was not prejudicial.

The judgment is affirmed.