# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TRISHAN AIR, INC.; KERRY
ACQUISITIONS, LLC,
        *Plaintiffs-Appellants,*

      v.

FEDERAL INSURANCE COMPANY;
STARR AVIATION AGENCY, INC.; THE
BUCKNER COMPANY, INC.; DAVID
WITTWER; ARLINGTON/ROE &
COMPANY, INC.,
        *Defendants-Appellees.*

No. 09-55317

D.C. No.
2:07-cv-06204-
RGK-FMO

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
June 11, 2010—Pasadena, California

Filed February 16, 2011

Before: Alfred T. Goodwin, Johnnie B. Rawlinson,
Circuit Judges, and Mark W. Bennett, District Judge.*

Opinion by Judge Rawlinson

---

*The Honorable Mark W. Bennett, U.S. District Judge for the Northern
District of Iowa, sitting by designation.

## COUNSEL

David A. Shaneyfelt (argued), Finley T. Harckham, Dennis J. Artese, and Ann M. Piazza, Anderson Kill & Olick, Ventura, California, and New York, New York, and Louis Franecke, Franecke Law Group, San Rafael, California, for appellants Trishan Air, Inc. and Kerry Acquisitions, LLC.

Ralph S. LaMontagne, Jr., LaMontagne & Terhar LLP, Los Angeles, California, for appellee Federal Insurance Co.

## OPINION

RAWLINSON, Circuit Judge:

Appellants Trishan Air, Inc. and Kerry Acquisitions, LLC (collectively Trishan) purchased an aviation insurance policy from Appellee Federal Insurance Co. (Federal). After an accident involving one of Trishan's corporate jets, Trishan filed a claim with Federal. Federal denied coverage because the co-pilot had not undergone the training mandated by the policy's pilot warranty. We affirm the district court's summary judgment in favor of Federal due to Trishan's failure to raise a material issue of fact regarding strict compliance with the pilot warranty, breach of the implied covenant of good faith and fair dealing, or bad faith. In addition, Trishan's claim for coverage under Coverage 29 of the policy was not properly raised in the district court.

## I.  BACKGROUND

Trishan retained David Wittwer (Wittwer) and the Buckner Company to procure the renewal of Trishan's aviation insurance policy covering a Dassault Falcon 900 B aircraft. Trishan's chief pilot informed Wittwer that Trishan sought a renewal policy that provided for second-in-command pilots' compliance only with the training requirements of 14 C.F.R. § 61.55.[1]

Arlington/Roe & Company (A/R) acted as the insurance broker for Trishan. Accordingly, Wittwer contacted Connie French (French) of A/R "to obtain a quote for the replacement policy from Starr Aviation."[2] Sam Seybert (Seybert), Starr Aviation's underwriter, determined that he could not provide a pilot warranty limited to the basic requirements listed in 14 C.F.R. § 61.55. As a result, Seybert transmitted a quotation to French that included a pilot warranty requiring pilots to complete ground and flight courses, including simulator training, for the make and model of the covered aircraft. In a subsequent email to French, Seybert clarified that the pilot warranty covered second-in-command pilots (SICs).[3] French forwarded this information to Wittwer, who understood that, "under the Starr Aviation proposal, the schooling requirements and simulator requirements would apply to back-up SICs."

Wittwer subsequently requested a binder for the policy. The binder included a pilot warranty endorsement that provided:

> It is required that the aircraft is operated by a two

---

[1] This regulation contains basic qualifications for second-in-command pilots. *See* 14 C.F.R. § 61.55.

[2] Starr Aviation served as Federal's program manager for policy underwriting.

[3] We utilize the terms "second-in-command" and "co-pilot" interchangeably in this opinion.

pilot crew at all times that has been approved by the named insureds [sic] chief pilot.

It is further required that such pilot(s) must have successfully completed a ground and flight recurrent/initial training course for the make and model operated within the past 18 months. Any such course must incorporate the use of a motion-based simulator specifically designed for the insured make and model/make and model series.

The policy contained a nearly identical pilot warranty and Exclusion F, which excluded coverage consistent with the pilot warranty provisions.[4]

Scott Michael (Michael), Trishan's chief pilot, was in command of the covered aircraft during the accident. Michael was unaware at the time of the accident that the Federal policy contained "commercial flight school and simulator training requirements" for second-in-command pilots. According to Michael, he would "have never, and would never, permit any pilot to operate any aircraft if that pilot did not meet both the applicable minimum requirements under federal regulations and any further training requirements set forth in the insurance policy covering the aircraft."

Dennis Piermarini (Piermarini) served as the second-in-command for the aircraft during the accident. Piermarini had "45 years and 15,000 hours of flight experience with 13,000 hours in jet aircraft." He also "flew as co-pilot in the Falcon 900 as second-in-command for approximately five round-trip flights and a total of approximately nine hours of flight time." Piermarini maintained that, if he had performed the simulator training, he "would have learned no new information or train-

---

[4] The only difference between the binder's pilot warranty and the policy is the absence of the word "and" between "ground" and "flight" in the policy's warranty.

ing that would have either alerted [him] to any condition or contributed to any of the actions that [he] took . . ."

According to Michael's expert witness report, Piermarini received "approximately 8-10 hours of static cockpit simulation of procedures, emergency procedures, placement of placards, markings, instrumentation and other operations of the aircraft." Michael stated that this training was "very similar to simulator training, and in some cases better . . ." After conducting "[a] check ride flight," Michael believed that Piermarini "was well versed and procedurally accurate in all particulars of the Falcons systems." Piermarini also "flew in the jump seat as an observer on several flight legs . . ." Michael opined that Piermarini's failure to undergo simulator training would not have affected Piermarini's qualifications to operate the aircraft.

In his declaration, Charles Tatum (Tatum), Trishan's expert, stated that the accident would not have been prevented if the pilots had undergone simulator or ground training. In his expert report, Tatum opined that Piermarini's "8-10 hours of static cockpit training [was] very similar to simulator training and in some cases better . . ." Tatum concluded that "a full motion simulator course" would not have altered Piermarini's qualifications "in the slightest."

According to Seybert, "Starr Aviation consider[ed] simulator training to be critical — particularly for purposes of emergency training, as there are a number of emergency procedures that can easily be practiced in a flight simulator that *cannot* be safely practiced in an *actual aircraft*." (emphasis in the original). Seybert also stated that Piermarini "would not have been approved as a pilot [because] he had only flown a total of about 25 hours in the preceding four years . . ."

Federal denied coverage for the accident because Piermarini "never attended *any* formal course relative to *any* Fal-

con aircraft" in violation of the pilot warranty and Exclusion F (emphasis in the original).

In its first amended complaint, Trishan alleged claims for breach of contract; tortious breach of the implied covenant of good faith and fair dealing; reformation; and declaratory judgment based on Federal's denial of coverage.[5] The district court held that Federal's denial of coverage comported with California law, as Trishan did not strictly comply with the pilot warranty. The district court granted summary judgment in favor of Federal, and Trishan filed a timely notice of appeal.

## II.   STANDARDS OF REVIEW

"We review the district court's grant of summary judgment *de novo*." *Hesse v. Sprint Corp.*, 598 F.3d 581, 586-87 (9th Cir. 2010) (citation omitted).

"Construction of a contractual insurance policy provision is a question of law and therefore subject to de novo review." *Assurance Co. of America v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004) (citation omitted).

"We review de novo a district court's interpretation of law, including state law." *Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 699 (9th Cir. 2010) (citation omitted). "When interpreting state law, federal courts are bound by decisions of the state's highest court." *Assurance Co. of America*, 379 F.3d at 560 (citation and alteration omitted). "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Id.* (citation omitted).

---

[5]Trishan alleged additional claims against Wittwer, the Buckner Company, Starr Aviation, and A/R that are not at issue in this appeal. Trishan also did not oppose summary judgment on its reformation claim.

## III.   DISCUSSION

### A.   Substantial Compliance With The Pilot Warranty

Trishan asserts that summary judgment was improper because, under California law, it was not required to strictly comply with the pilot warranty to receive coverage.[6]

[1] There is a notable paucity of recent California Supreme Court precedent concerning an insured's strict compliance with insurance warranties. However, the California Supreme Court has held that strict compliance may be required. In *McKenzie v. Scottish Union & Nat'l Ins. Co.*, 112 Cal. 548 (1896), the California Supreme Court determined that the insured's failure to employ a watchman at a sawmill as required by a warranty precluded coverage for damage caused by a fire. The California Supreme Court observed:

> By a warranty the insured stipulates for the absolute truth of the statement made, and the strict compliance with some promised line of conduct, upon penalty of forfeiture of his right to recover in case of loss should the statement prove untrue, or the course of conduct promised be unfulfilled. A warranty is an agreement in the nature of a condition precedent, and, like that, must be strictly complied with. . . . If the warranty be a statement of facts, it must be literally true; if a stipulation that a certain act shall or shall not be done, it must be literally performed.

*Id.* at 555 (citation omitted). Although the California Supreme Court articulated that "there was neither a literal nor a substantial compliance with the terms of the warranty," *id.* at 556, it appears that the California Supreme Court's decision

---

[6]Causation is not at issue in this appeal, as Trishan and Federal stipulated that Federal was not required to demonstrate a causal connection between the accident and any breach of the pilot warranty or Exclusion F.

was premised on the insured's failure to strictly comply with the warranty. *See id.* at 559-60 ("As the evidence of plaintiff all showed affirmatively a nonfulfillment of the warranty, the court in the present instance should have granted defendant's motion for a nonsuit; and the verdict of the jury on precisely the same evidence was contrary to law.");[7] *see also Hogins v. Supreme Council of the Champions of the Red Cross*, 76 Cal. 109, 112 (1888) (holding that failure to strictly comply with a warranty precluded coverage because "[t]he warranty is an agreement in the nature of a condition precedent, and like that must be strictly complied with. . . . The same principles apply to all kinds of insurance.") (citation omitted); *Wells, Fargo & Co. v. Pacific Ins. Co.*, 44 Cal. 397, 412 (1872) ("The very meaning of a warranty is, to preclude all question whether it has been *substantially* complied with; it must be literally.") (citation omitted) (emphasis in the original).[8]

**[2]** California Courts of Appeal have also articulated the necessity of strict compliance with warranties. *See Chase v. Nat'l Indem. Co.*, 129 Cal.App.2d 853, 858 (1954) ("A statement in an insurance policy importing an intention to do or not to do a thing which materially affects the risk is a war-

---

[7]Trishan maintains that the California Supreme Court's citation to *Sierra Milling, Smelting, & Mining Co. v. Hartford Fire Ins. Co.*, 76 Cal. 235 (1888), in *McKenzie* demonstrates the sufficiency of substantial compliance with warranties. However, in McKenzie, the California Supreme Court cited to *Sierra Milling* regarding whether negligent performance of a warranty affects coverage. *See McKenzie*, 112 Cal. at 559; *see also Sierra Milling*, 76 Cal. at 237-38. In any event, the California Supreme Court has cited *McKenzie* for the general concept that failure to comply with an unambiguous warranty precludes coverage. *See Holz Rubber Co., Inc. v. American Star Ins. Co.*, 14 Cal.3d 45, 59 n.12 (1975).

[8]Because this precedent is controlling, certification to the California Supreme Court is not required. *See* Cal. R. of Court 8.548(a) ("On request of the United States Supreme Court, a United States Court of Appeals, or the court of last resort of any state, territory, or commonwealth, the Supreme Court may decide a question of California law if: (1) The decision could determine the outcome of a matter pending in the requesting court; and (2) There is no controlling precedent.").

ranty that such act or omission will take place. . . . Generally speaking, compliance with the terms of a warranty is a condition precedent to a right of recovery.") (citations omitted); *De Campos v. State Comp. Ins. Fund*, 122 Cal.App.2d 519, 530 (1954) (holding that the insured's failure to comply with an affirmative warranty precluded reimbursement because "[c]ompliance with the terms of this warranty [was] a condition precedent to a right of recovery insofar as this particular risk [was] concerned. Noncompliance defeat[ed] recovery.") (citation omitted); *Finkbohner v. Glens Falls Ins. Co. of Glens Falls, New York*, 6 Cal.App. 379, 387 (1907). Thus, California courts have recognized that insurance warranties require strict compliance to invoke coverage.

[3] Trishan's argument is premised on the warranty being a mere condition of the insurance policy, thus requiring only substantial compliance. This argument ignores the dichotomy between conditions relating to basic coverage, such as notice provisions, and conditions, like the pilot warranty, that are "an element of the fundamental risk insured." *Root v. Am. Equity Specialty Ins. Co.*, 130 Cal.App.4th 926, 943 (2005). "There *are* well-established differences between insuring clauses, exclusions, and conditions that should not be amalgamated into one binary question: coverage yes or no under an 'if . . . then' analysis." *Id.* at 942 (citation omitted) (emphasis in the original).

[4] Contrary to such variations in insurance provisions, Trishan seeks universal application of the substantial compliance doctrine untethered from the type of warranty at issue. However, strict compliance with pilot warranties serves as a necessary corollary of aviation insurance policies. "Federal courts uniformly enforce [pilot warranties] . . . and for good reason. Pilot qualifications and experience are obviously factors bearing directly on the risk the insurer is underwriting." *Old Republic Ins. Co. v. Gormley*, 77 F. Supp. 2d 705, 707 (D. Md. 1999) (citations omitted). As exemplified by *Nat'l Ins. Underwriters v. Carter*, 17 Cal.3d 380 (1976), Trishan's

approach undermines the reasons for including pilot warranties in aviation insurance policies. In *Nat'l Ins. Underwriters*, the insurer denied coverage of an airplane accident because the airplane's owners permitted a non-covered pilot to fly the plane. *See id.* at 383. An exclusion provided that the policy was "wholly inapplicable unless the aircraft [was] piloted by a person whose name and qualifications [were] specified in the policy." *Id.* at 386. The California Supreme Court observed that "[a]n insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." *Id.* (citation omitted) (emphasis added). In upholding the insurer's denial of coverage, the California Supreme Court opined:

> It appears self-evident that the [insured] could not reasonably have expected [the insurer] to afford coverage without regard to the identity and qualifications of those persons entrusted with flying the aircraft. In view of the relatively few persons qualified to fly a plane, and the obvious hazard to the occupants and to the aircraft from flights by unqualified pilots, it is understandable that an insurer would insist on knowing who the proposed pilots were, evaluating their qualifications, and making its policy inapplicable to accidents involving pilots not disclosed to, nor approved by, the insurer. In our view, the pilot exclusion clause is unambiguous and accords with the reasonable expectations of the insured.

*Id.* (internal quotation marks omitted).[9] The California

---

[9]Trishan's attempt to distinguish this case because it was the chief pilot who did not comply with the warranty, as opposed to a co-pilot, is unpersuasive. Trishan's argument ignores the underlying premise for the California Supreme Court's ruling that an insurer has the right to assess the qualifications of pilots who may operate the covered aircraft. *See Nat'l Ins. Underwriters*,17 Cal.3d at 386 ("[I]t is understandable that an insurer

Supreme Court's emphasis on the importance of pilot warranties persuades us that California courts would require strict compliance with the pilot warranty. *See also Nat'l Union Fire Ins. Co. of Pittsburg v. Miller*, 192 Cal.App.3d 866, 872-73 (1987) (concluding that the denial of coverage was proper based on a pilot warranty requiring a current medical certificate). The California Supreme Court's approach to this issue militates against Trishan's position that substantial compliance is universally acceptable, irrespective of the type of warranty implicated. This is particularly true in view of Trishan's failure to cite any case in which California courts have accepted substantial compliance with pilot warranties.[10,11]

---

would insist on knowing who the proposed pilots were, evaluating their qualifications, and making its policy inapplicable to accidents involving pilots not disclosed to, nor approved by, the insurer."). Trishan's argument would nullify any qualifications for a co-pilot as long as the co-pilot was not operating the controls at the time of the accident.

[10]In predicting the California Supreme Court's resolution of the pilot warranty issue, we may also consult the decisions of other jurisdictions. *See Assurance Co. of America*, 379 F.3d at 560. Other courts are in accord that coverage may be denied because of violations of pilot warranties. *See Potter v. U.S. Specialty Ins. Co.*, 98 P.3d 557, 559-60 (Ariz. Ct. App. 2004) (upholding denial of coverage where pilot warranty required a certain number of "logged" hours, although the pilot may have flown a sufficient number of non-logged hours); *Howell v. U.S. Fire Ins. Co.*, 363 S.E.2d 560, 563 (Ga. Ct. App. 1987) (affirming summary judgment in favor of insurer because insured's pilot did not attend the flight training school mandated by the pilot warranty); *W. Food Prods. Co., Inc. v. U.S. Fire Ins. Co.*, 699 P.2d 579, 584 (Kan. Ct. App. 1985) (holding that insurer properly denied coverage because the pilot warranty was "unambiguous and [the court] refuse[d] to alter this plain language to forestall its effect.").

[11]*Nat'l Indem. Co. v. Demanes*, 86 Cal.App.3d 155 (1978), does not impact our analysis. In that case, the California Court of Appeal considered whether the insurer properly denied coverage for an accident involving a pilot who had an expired medical certificate. *See id.* at 158. The California Court of Appeal held that the denial of coverage was improper because the exclusion was limited to the pilots' identities and did not address pilot qualifications. *See id.* at 159. The binder also did not mention the medical certificate. *See id.* at 160.

Trishan relies on the substantial compliance doctrine utilized in cases involving statutory requirements. However, this precedent is inapposite. For example, in *Costa v. Superior Ct.*, 128 P.3d 675, 696-97 (Cal. 2006), the California Supreme Court held that inadvertent irregularities in the filing of an initiative petition did not warrant removal of the initiative measure from the ballot. The California Supreme Court's reasoning stemmed from the informational purpose of the initiative process, thus minimizing the need for strict compliance. *See id.* at 690 ("The requirements of both the Constitution and the statute are intended to and do give information to the electors who are asked to sign the initiative petitions. *If that be accomplished in any given case, little more can be asked than that a substantial compliance with the law and the Constitution be had, and that such compliance does no violence to a reasonable construction of the technical requirements of the law*.") (citation and footnote reference omitted) (emphasis in the original). Although the California Supreme Court did not require "actual compliance" with the statutory mandates, "each objective or purpose of a statute must be achieved in order to satisfy the substantial compliance standard[.]" *Id.* at 693 n.24. Accordingly, "inadvertent, good-faith human error" did not justify exclusion of the initiative from the ballot "when it is apparent that the technical defect in question, as a realistic matter, did not adversely affect the integrity of the electoral process or frustrate the purposes underlying the relevant constitutional or statutory requirements." *Id.* at 700.

The present appeal does not involve compliance with the informational purposes of a statutory scheme despite "inadvertent, good-faith human error." *Id.* Instead, Trishan's failure to comply with any aspect of the required training for co-pilots completely undermined Federal's ability to negotiate and implement the terms of its policies. If adopted, the practical effect of Trishan's proposition would be significant, as it would permit an insured to universally assert that only substitute performance, based on the insured's subjective selection,

would be necessary to receive coverage. This approach nullifies any specific requirement that an insurer has in assuming the covered risk, and generates uncertainty on the insurer's part regarding compliance. *See Everett v. State Farm Gen. Ins. Co.*, 162 Cal.App.4th 649, 656 (2008), *as modified* ("It is, of course, well established that an insurer has a right to limit the policy coverage in plain and understandable language, and is at liberty to limit the character and extent of the risk it undertakes to assume.") (internal quotation marks omitted). As it negotiates the policy's terms, an insurer would be unable to discern what substitutes equated to the required conditions.[12] To adopt this approach, we would have to rewrite the insurance policy in contravention of California law. *See Supervalu, Inc. v. Wexford Underwriting Managers, Inc.*, 175 Cal.App.4th 64, 76 (2009), *as modified* ("[T]he parties agreed to the policy language and we have no power to rewrite it."); *see also Kwok v. Transnation Title Ins. Co.*, 170 Cal.App.4th 1562, 1571 (2009) ("We do not rewrite any provision of any contract, including an insurance policy, for any purpose.") (citation, alterations, and internal quotation marks omitted).

**[5]** Our decision in *Nat'l Union Fire Ins. Co. of Pittsburgh v. California Cotton Credit Corp.*, 76 F.2d 279 (9th Cir. 1935) does not compel a contrary conclusion. In that case, we considered whether the insured complied with a promissory warranty requiring the keeping of certain records concerning the

---

[12]The concern is evident in this case, as Federal specifically clarified to Trishan's agent that co-pilots must receive simulator training. Such clarification would be meaningless under Trishan's approach, as its own subjective considerations regarding potential substitutes would be controlling irrespective of Federal's specific requirements. Additionally, the insurer's premium considerations are affected, as an insured would likely negotiate a premium based on the risk the insurer is willing to assume in view of the pilot warranty. *See, e.g.*, *Aviation Charters, Inc. v. Avemco Ins. Co.*, 784 A.2d 712, 714 (N.J. Sup. Ct. 2001) (observing that the insurer's requirement of a certain number of logged hours by the pilot and the corresponding exclusion "directly affect the risk the insurer assumes and upon which premiums are established.") (citation omitted).

insured's cotton crops. *See id.* at 282-83. Without extensive analysis, we broadly observed that "[p]rovisions requiring the keeping of records and their production upon request for inspection by the insurer are promissory warranties. Substantial compliance with a promissory warranty is sufficient." *Id.* at 283 (citations omitted). We did not resolve this issue under California law, relying instead on federal cases such as *Nat'l Surety Co. v. Earl Park State Bank*, 63 F.2d 825 (7th Cir. 1933). *See Nat'l Union*, 76 F.2d at 283. In *Nat'l Surety*, the Seventh Circuit considered whether the insured complied with the recordkeeping requirements of a warranty in a burglary insurance policy. *See Nat'l Surety*, 63 F.2d at 825-26. The Seventh Circuit opined that substantial compliance with recordkeeping requirements is sufficient. *See id.* at 827. Notably, *Nat'l Union* and *Nat'l Surety* do not address warranties involving the actual risk upon which the insurer makes its coverage decisions. Thus, it does not follow that application of the substantial compliance doctrine regarding recordkeeping implicates compliance with warranties premised on the underlying risk. Given the California Supreme Court's approach to pilot warranties, our decision in *Nat'l Union* does not control the outcome of this appeal. We conclude that substantial compliance is insufficient to satisfy pilot warranties under California law. *See McKenzie*, 112 Cal. at 555; *see also Nat'l Ins. Underwriters*, 17 Cal.3d at 386; *Nat'l Union Fire Ins.*, 192 Cal.App.3d at 872-73.[13]

---

[13]Relying on *BankAmerica Pension Plan v. McMath*, 206 F.3d 821 (9th Cir. 2000), Trishan asserts that we have recognized the California Supreme Court's application of the substantial compliance doctrine in the insurance context. In McMath, we considered whether a beneficiary substantially complied with the requirements of a 401(k) pension plan. *See McMath*, 206 F.3d at 830-31. We observed that "[t]he Supreme Court of California has articulated the state's substantial compliance doctrine in insurance contracts[.]" *Id.* at 830. "Where the insured makes every reasonable effort under the circumstances, complying as far as he is able with the rules, and there is a clear manifestation of intent to make the change, which the insured has put into execution as best he can, equity should regard the change as effected." *Id.* (citation omitted). We concluded that the beneficiary did not substantially comply with the plan's requirements

**[6]** Even if the substantial compliance doctrine applied, summary judgment was nevertheless proper because Trishan did not comply with any aspect of the pilot warranty for co-pilots. A common analytical thread runs through the substantial compliance cases cited by Trishan: the insured's non-compliance was typically minor and the insured complied with at least some of the specific requirements at issue. *See, e.g.*, *McCormick v. Sentinel Life Ins. Co.*, 153 Cal.App.3d 1030, 1039, 1045-46 (1984) (holding that the insured's "failure to supply a single item of information on the claim form" raised a question of fact); *Nat'l Union*, 76 F.2d at 283 (noting that the insured complied with the warranty except in "one instance, through an oversight" the specified records were not timely completed.). California courts have rejected substantial compliance arguments where the insured completely failed to comply with a warranty or condition. *See Abdelhamid v. Fire Ins. Exchange*, 182 Cal.App.4th 990, 1000 (2010) ("The deficiencies in [the insured's] proof of loss were a far cry from minor defects and no reasonable trier of fact could conclude she substantially performed her obligations or complied with the condition of her insurance contract requiring her to provide a proof of loss with supporting documentation.") (citation omitted); *S & M Lamp Co. v. Lubermens Mut. Cas. Co.*, 199 Cal.App.2d 446, 453 (1962), *as modified* (holding that because there was no compliance, the insurer was not required to provide coverage, as "[t]he court [was] not free to rewrite the contract or to indulge in any forced construction of its language.") (citation omitted).[14]

---

because he "was careless when he failed to sign the beneficiary designation form." *Id.* at 831. Although *McMath* does not expressly resolve whether substantial compliance is sufficient for pilot warranties, its language undermines Trishan's argument, as Trishan did not "make[ ] every reasonable effort" to comply with the pilot warranty. *Id.* Instead, Trishan failed to comply with the required training for co-pilots in any respect.

[14]Significantly, California does not treat all such provisions universally in terms of prejudice to the insurer. If the insured fails to comply with a

**[7]** Trishan elides the fact that it did not comply with the pilot warranty's training requirements for co-pilots in any fashion. Instead, Trishan asserts that the pilot's alternative training served as a substitute for the simulator training.[15] However, a complete failure to comply is not analogous to minor deficiencies. *See Aviation Charters*, 784 A.2d at 714 ("Unlike the notice of claim . . . that was intended to aid the insurance carrier in investigating, settling, and defending claims, the unambiguous exclusionary clause and the Approved Pilot Endorsement involved in this appeal define the coverage provided.") (citations and internal quotation marks omitted). Thus, Trishan's complete failure to comply with the pilot warranty precludes coverage even under the substantial compliance doctrine. *See, e.g.*, *Abdelhamid*, 182 Cal.App.4th at 1000; *S & M Lamp Co.*, 199 Cal.App.2d at 453.

Trishan also maintains that the pilot warranty cannot serve as an express warranty because of its ambiguity. Trishan's argument is premised on the pilot warranty's usage of the

notice provision or cooperation clause, the insurer must demonstrate that it was prejudiced by the non-compliance. *See Belz v. Clarendon Am. Ins. Co.*, 158 Cal.App.4th 615, 625 (2007). However, if the insured violates a non-payment provision by "making voluntary payments without the insurer's consent" before tender of the claim, *id.* at 626, no prejudice is necessary because such provisions serve as "a *condition precedent* to the insured's right to be indemnified . . ." *Id.* at 627 (citations omitted) (emphasis in the original). Such distinctions undermine Trishan's premise that the substantial compliance doctrine is universally applicable to all conditions.

[15]Trishan erroneously relies on *Cal-Air Conditioning, Inc. v. Auburn Union Sch. Dist.*, 21 Cal.App.4th 655 (1993), in support of its proposition that substitute performance is valid. In that case, the California Court of Appeal did not address compliance with an insurance warranty. Instead, substantial compliance was sufficient for statutory requirements relating to a bidding process for contractors. *See id.* at 668-69 (concluding that telephonic communication satisfied the statute's provisions requiring written notice).

term "pilot(s)" as opposed to "pilots." Trishan asserts that it complied with the warranty, because "pilot(s)" could be read as only requiring the chief pilot to undergo the simulator training.

"Policy language is ambiguous if it is susceptible of more than one reasonable interpretation in the context of the policy as a whole." *Legacy Vulcan Corp. v. Superior Ct.*, 185 Cal.App.4th 677, 688 (2010) (citation reference omitted). "But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." *Carolina Cas. Ins. Co. v. L.M. Ross Law Group, LLP*, 184 Cal.App.4th 196, 206 (2010) (citation omitted). Within the context of the policy, the pilot warranty contemplates that all pilots operating the aircraft must undergo the specified training, irrespective of its usage of the parenthetical. *See State Farm Gen. Ins. Co. v. JT's Frames, Inc.*, 181 Cal.App.4th 429, 444 (2010) ("[A]n abstract ambiguity based on a semantically permissible interpretation of a word or phrase cannot create coverage where none would otherwise exist."); *see also City of Carlsbad v. Ins. Co. of the State of Penn.*, 180 Cal.App.4th 176, 182 (2009) ("[J]ust because language could be more precise or explicit does not mean it is ambiguous.") (citation omitted).

**[8]** Additionally, the parties' negotiations reflect that co-pilots were covered by the warranty. "In determining whether policy language is ambiguous, we consider not only the face of the contract but also any extrinsic evidence that supports a reasonable interpretation." *GGIS Ins. Servs., Inc. v. Superior Ct.*, 168 Cal.App.4th 1493, 1507 (2008) (citation omitted). The record reflects that Federal explicitly conveyed to Trishan's representatives that co-pilots must receive the simulator training. Thus, Trishan's argument premised on the warranty's alleged ambiguity is unavailing.[16]

---

[16]Trishan asserts that, because the pilot warranty lacks "precatory language warning that express compliance is required," substantial compli-

**[9]** The district court, therefore, properly granted summary judgment because no material issue of fact was raised regarding Trishan's lack of compliance with the pilot warranty.[17]

### B.  Trishan's Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing And For Bad Faith

**[10]** "California law recognizes in every contract, including insurance policies, an implied covenant of good faith and fair dealing." *Brehm v. 21st Century Ins. Co.*, 166 Cal.App.4th 1225, 1235 (2008), *as modified* (citations omitted). "In the insurance context the implied covenant requires the insurer to refrain from injuring its insured's right to receive the benefits of the insurance agreement." *Id.* (citation omitted). "As a general rule . . . there can be no breach of the implied covenant of good faith and fair dealing if no benefits are due under the policy[.]" *Id.* Summary judgment on Trishan's claim was proper because Trishan's failure to comply

---

ance is justified. However, the pilot warranty expressly establishes the requirements for coverage. "This provision patently is in the nature of a condition *precedent* to coverage, not an exclusion from coverage." *N. Am. Capacity Ins. Co. v. Claremont Liability Ins. Co.*, 177 Cal.App.4th 272, 289 (2009) (emphasis in the original). "A condition *precedent* refers to an act, condition or event that must occur before the insurance contract becomes effective or binding on the parties." *Id.* (citation and alteration omitted) (emphasis in the original). Additionally, the pilot warranty is incorporated as an exclusion, which explicitly provides that "[t]he insurance provided by the Policy shall not apply . . . to any insured while the aircraft is in-flight if piloted by other than the pilot or pilots designated under item 4 of the Declarations[.]" Item four of the declarations references the pilot warranty "As Endorsed."

[17]Trishan also contends that its claim for physical damage loss survives summary judgment. Because this argument depends entirely on the substantial compliance doctrine, summary judgment was proper for this claim as well. The same is true for Trishan's argument concerning Exclusion F. *See Malcom v. Farmers New World Life Ins. Co.*, 4 Cal.App.4th 296, 301 (1992) ("Where, as here, an insurer has clearly limited its coverage, the limitation's plain language must be respected.") (citation and footnote reference omitted); *see also Nat'l Ins. Underwriters*, 17 Cal.3d at 386.

with the pilot warranty precluded a material issue of fact regarding coverage. *See id.*

**[11]** Trishan's bad faith claim fails under California's genuine dispute rule. "[A]n insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Id.* at 1237 (citation and internal quotation marks omitted). "The linchpin of a bad faith claim is that the denial of coverage was unreasonable." *McCoy v. Progressive W. Ins. Co.*, 171 Cal.App.4th 785, 793 (2009). "Before an insurer can be found to have acted in bad faith for its delay or denial in the payment of policy benefits, it must be shown that the insurer acted unreasonably or *without proper cause*." *Id.* (citation omitted) (emphasis in the original). Because California law does not establish that substantial compliance with the pilot warranty was sufficient for coverage, we conclude that no material issue of fact was raised regarding Federal's good faith assertion of its coverage position. *See id.* ("Where there is a *genuine issue* as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of that dispute.") (citation omitted) (emphasis in the original); *see also Griffin Dewatering Corp. v. N. Ins. Co. of New York*, 176 Cal.App.4th 172, 204 (2009), *as modified* (explaining that "the insurer's position was rooted in the literal language of the . . . exclusion, so the insurer was going to win if a court were to apply the literal language of the exclusion.").[18]

---

[18]Trishan contends that the genuine dispute rule is inapplicable because Federal failed to investigate the co-pilot's alternative and substitute training. "The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim." *McCoy*, 171 Cal.App.4th at 794 (citation omitted). However, Trishan's argument is premised on its assertion that its co-pilot's experience served as a substitute for the pilot warranty's required training.

### C.  Trishan's Claim Premised On Coverage 29 of the Policy

Coverage 29 of the policy provided:

> If a scheduled aircraft is not used in-flight for more than the minimum lay-up period shown in the Declarations the named insured agrees to notify the Company as soon as practicable. At the end of the policy period, the Company will return a pro-rata percentage credit of the applicable premium for the entire period of the lay-up as shown under Coverage 29 in the Declarations.
>
> The insurance provided by Coverage 29 shall not apply to any scheduled aircraft laid up because of any loss or damage covered by the Policy.

(emphases omitted).

Because Trishan's complaint did not raise this claim, it was not properly before the district court.[19] *See Wasco Prods., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("The necessary factual averments are required with respect to each material element of the underlying legal theory. Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.") (citation and alterations

As discussed, California law does not support Trishan's contention and Federal merely asserted its legal position regarding compliance with the pilot warranty. *See Griffin Dewatering Corp.*, 176 Cal.App.4th at 201 n.33 ("[T]here is no issue in this case involving a failure-to-investigate for its own sake, that is, where coverage actually turned on facts the insurer should have unearthed . . . From the beginning, the case . . . has turned on a pure question of law.").

[19]Trishan raised this claim for the first time in its opposition to summary judgment.

*omitted); see also Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006).[20]

## IV. CONCLUSION

California law requires strict compliance with a pilot warranty. Trishan failed to comply with any aspect of the warranty's required training for co-pilots, and no material issue of fact was raised regarding insurance coverage.

Because there was a genuine question of coverage at the time the coverage determination was made, no material issue of fact was raised concerning Trishan's bad faith claims.

**AFFIRMED.**

---

[20]Trishan asserts that this claim was properly raised because Coverage 29 was mentioned during the deposition of Federal's claim representative. However, in his deposition, the claim representative merely stated that he was unfamiliar "with the criteria under which the lay-up credit would be due to the policyholder" because it was "an underwriting issue." The representative also stated that there was no record that Trishan made a claim under Coverage 29 after the completion of the policy period.