**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 15 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



CORKY MCMILLIN CONSTRUCTION
SERVICES, INC., a California
corporation; et al.,

      Plaintiffs - Appellees,

  v.

U.S. SPECIALTY INSURANCE
COMPANY, a Texas corporation,

      Defendant - Appellant.

No. 12-56787

D.C. No. 3:11-cv-01686-DMS-
KSC

MEMORANDUM*

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Submitted December 12, 2014**
Pasadena, California

Before: SILVERMAN, BEA, and CHRISTEN, Circuit Judges.

    Defendant-Appellant U.S. Specialty Insurance Company appeals from the

district court's partial summary judgment in favor of Plaintiffs-Appellees Corky

---

     \*     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

     \*\*    The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

McMillin Construction Services, Inc., McMillin-NTC 129, LLC, McMillin-NTC 80, LLC, McMillin-NTC 138, LLC, and McMillin-NTC, LLC (collectively, the Insureds).  We have jurisdiction under 28 U.S.C. § 1291.  Reviewing the district court's summary judgment and interpretation of the insurance policy *de novo*, *Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 426 (9th Cir. 2011), we affirm.

The policy issued by U.S. Specialty to the Insureds provides a general grant of coverage for claims alleging that the Insureds engaged in "wrongful acts," which include any "actual or alleged act, error, misstatement, misleading statement, omission or breach of duty."  However, the "Errors & Omissions Exclusion" states that U.S. Specialty is not liable for any claim "arising out of, based upon or attributable to the rendering of or failure to render services for others, including without limitation services performed for or on behalf of customers or clients."

The ambiguity of this exclusion's terms becomes apparent when read in connection with the underlying complaint for which the Insureds sought coverage. Because the term "services" is not defined in the policy, it is proper to look to dictionary definitions for its "ordinary and popular" meaning.  *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867-68 (Cal. 1993).  These definitions, which boil down to "helping or doing work for someone," are broad,

but breadth of meaning does not equal ambiguity. *Id.* at 868. The original underlying complaint for which U.S. Specialty denied coverage alleged the kinds of breaches of duty and misstatements that are generally covered by the policy, and alleged only that these occurred in connection with "purchases" of homes, without any allegations regarding actions that were clearly "services." The subsequent amended complaints' allegations of misstatements in marketing materials, or that Plaintiffs were "brokers" for the home sales, no more clearly alleged that they provided "services." Therefore, it is ambiguous whether the policy's exclusion for claims in connection with "services" applies. Construing the policy language narrowly, in favor of coverage, and applying it to the circumstances of this case, the Insureds had a reasonable expectation that the misstatements and breaches of duty alleged in the underlying complaint were "wrongful acts" covered by the policy. *Clarendon Am. Ins. Co. v. N. Am. Capacity Ins. Co.*, 186 Cal. App. 4th 556, 567 (Cal. Ct. App. 2010).

The district court correctly found the proffered extrinsic evidence was not relevant, because it only pertained to a different insurance transaction and policy, or reflected comments by the Insureds' insurance brokers *after* the filing of the underlying complaint. It sheds no light on the Insureds' own "reasonable expectations" at the time of contracting regarding what types of acts the *present*

policy would cover, and does not provide a "reasonable interpretation" of the E&O Exclusion that would include the types of claims in the underlying complaint.

However, the district court erred in concluding that the Insureds tendered the defense of their claim to Defendant, when in fact they merely provided notice of the underlying action. Notice triggers coverage, but an explicit written tender of the defense of the claim is required to exercise the right to tender. Absent a written tender of defense, the policy requires the Insureds to defend themselves, no matter that Defendant had notice of the claim. Therefore, the district court's judgment is reversed in part and this case will be remanded for proceedings not inconsistent with the foregoing.

REVERSED IN PART AND REMANDED.

_**Corky McMillin v USSIC 12-56787**_

BEA, J., dissenting:

The majority misunderstands California law and thereby ignores the plain meaning of the insurance contract to which it purports to give effect. I dissent.

I agree with the majority that the "services" exclusion covers a broad range of acts and transactions. I also agree that "breadth of meaning does not equal ambiguity." Slip. Op. at 2–3. And, California recognizes that a broad term is often used because a broad meaning is intended. _Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co._, 5 Cal. 4th 854, 865 (Cal. 1993). I disagree with the majority, however, on two points.

First, the majority construes the "services" exclusion narrowly because the third-party complaint alleged "the kind of breaches of duty and misstatements that are generally covered by the policy." Mem. Dispo. at 3. But, defining the scope of an insurance policy exclusion by determining what risks should be covered under the grant of coverage is a nonsense. An exclusion of coverage cannot obtain _unless_ there is coverage of the risk. If a finding of coverage eliminates an exclusion, the exclusion is illusory. For example, a baseball team might buy a special "Tommy John" surgery medical insurance policy the coverage of which extends to "all pitchers," subject to an exclusion: "No lefthanded pitchers shall be covered." The

1

majority's reasoning would require that a southpaw pitcher be covered because all pitchers are "generally covered by the policy." In other words, the majority interprets exclusions as unambiguous only if they are superfluous, which is hardly the law of California.[1] Further, textually, the majority's interpretation to narrow the "services" exclusion so not to cover "sales" is a mistake under California law.[2]

---

[1] For example, in *Jon Davler, Inc. v. Arch Insurance Company*, 229 Cal.App.4th 1025 (Cal. Ct. App. 2014), Davler brought an insurance coverage action against its insurer, Arch. Davler, a cosmetics company, employed a manager, Yang. When Yang found a used sanitary napkin near the women's toilet, she forced every female employee to undergo inspection to determine if they were on their menstrual period and the possible source of the napkin. *Id.* at 1029. Some of the female employees brought a false imprisonment and sexual harrassment suit against Davler and Yang. *Id.* Davler tendered defense to Arch under its commercial general liability policy, which had a coverage provision extending to injuries "arising out of" "false arrest, detention, or imprisonment." *Id.* at 1030. However, the policy included an employment related practices exclusion for claims "arising out of" "employment-related practices, policies, acts or omissions." *Id.* Arch refused to defend the employee suit, citing the exclusion, and Davler filed a breach of contract action in California court. The trial court sustained Arch's demurrer, stating that the claims in the employee suit fell within the exclusion. On appeal, the California Court of Appeal affirmed, holding that the exclusion unambiguously applied to the employee action. The California Court of Appeal specifically rejected Davler's argument that there was ambiguity in the "structure of the policy as a whole" because of the broad grant of coverage, instead holding that the unambiguous language of the exclusion should be given effect. *Id.* at 1036–39.

[2] That goods are sold the customer does not mean that services necessary and integral to the sale were not rendered. When a customer buys a cup of coffee, the waiter's services are part of the sale. The receipt lists the coffee (the asset sold) and has a space for the tip (the service).

If a term has only one meaning, it should be given that meaning, not "construed" as narrower than it is. *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1213 (Cal. 2003).

Second, the majority argues that the third-party complaint alleges breaches of duty through misstatements in connection with"sales," not "services,"; thus, there is ambiguity as to whether the exclusion applies to the claims of misrepresentations made by the buyer in the sale of McMillin's property. However, the record unambiguously establishes that McMillin was sued by Mann for statements McMillin made (and disclosures it failed to make) in connection with its rendering of *broker services* to Mann. **ER 219–318.** The third-party complaint states that Corky McMillin was the "real estate broker" for McMillin in the home sales at issue, and that Corky McMillin "marketed the 349 homes [] utilizing sales personnel, sales brochures, fliers, maps , models, and other forms of advertising media." **ER 301–02.** California law states that "a person acts as a broker only if he or she is acting (1) for compensation and (2) on behalf of someone else." *Horning v. Shilberg*, 130 Cal.App.4th. 197, 204 (Cal. App. 4th. 2005) (internal citations omitted). Even if representations made in the sale of homes, standing alone, would not constitute "services," the specific allegation here is of misrepresentation as part of the brokering services rendered by insured Corky

3

McMillin to the third party plaintiffs in the sale of homes. Thus, the E&O

exclusion for "services" unambiguously applies.

Moreover, the alleged breaches of duty and misstatements were not

irrelevant to or separable from the rendering of broker services. In California, an

essential part of a broker's fiduciary duty to prospective purchasers of resident real

estate property is to "conduct a reasonably competent and diligent visual inspection

of the property offered for sale and to disclose to that prospective purchaser all

facts materially affecting the value or desirability of the property that an

investigation would reveal." Cal. Civil § 2079. Thus, California courts have held

that the buyer of real estate is entitled to rely on the seller's broker's

representations, because the making of those representations is intrinsic to the

broker's services. *See, e.g.*, *Furla v. Jon Douglas Co.*, 65 Cal.App.4th 1069 (Cal.

Ct. App. 1998)[3].

---

[3] Furla purchased a home from Krasinski. Furla had his own real estate agent, and Krasinski employed Jon Douglas Co. as sellers' brokers. Jon Douglas Co. told Furla the home was approximately 5,500 feet. Furla did not have the home measured. Upon purchase, Furla realized it was roughly 4,500 feet. Furla sued Jon Douglas Co., alleging negligence and negligent misrepresentation in overstating the square footage of the house. The trial court granted summary judgment to defendant Douglas. On appeal, the California Court of Appeal reversed. Noting that the buyer of real estate is entitled to rely on the seller's broker's representations, and the broker has a duty to inspect the property before making those representations, the court held that there was a genuine issue of material fact as to whether the size of the house was so obvious that the buyer

Applying California law, therefore, and without relying on extrinsic evidence, I would hold that because the third-party complaint stated allegations of misrepresentations by McMillin in rendering of broker services to the third-party plaintiffs, the E&O Exclusion unambiguously excludes this claim from coverage. Because I would hold that U.S. Specialty had no duty to defend against this claim, I would not reach the question whether McMillin correctly tendered defense of the claim to U.S. Specialty. I respectfully dissent.

---

could be held to be aware of the true condition of the home.